THE CITY OF EAST ORANGE, A MUNICIPAL CORPORA-
TION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
DWIGHT R. G. PALMER, COMMISSIONER. STATE HIGH-
WAY DEPARTMENT, STATE OF NEW JERSEY, JOHN A.
KERVICK, TREASURER, STATE OF NEW JERSEY, AND
NEW JERSEY HIGHWAY AUTHORITY, A BODY POLI-
TIC AND CORPORATE UNDER THE STATUTES OF NEW
JERSEY, DEFENDANTS-APPELLANTS.

Argued April 22, 1968—Decided July 10, 1968.

*Mr. Adrian M. Foley, Jr.,* argued the cause for appellant New Jersey Highway Authority (*Mrs. Sonia Napolitano,* on the brief; *Messrs. Pindar, McElroy, Connell and Foley,* attorneys).

*Mr. David A. Biederman,* Deputy Attorney General, argued the cause for appellants Palmer and Kervick (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. Norman E. Scull* argued the cause for respondent (*Mr. Jack Okin,* attorney).

The opinion of the court was delivered

PER CURIAM. In *City of East Orange v. Palmer*, 47 *N. J.* 307 (1966), we held that the acquisition of real property by the State or by the New Jersey Highway Authority did not exempt the property from its liability for municipal taxes for any part of the calendar year in which the acquisition occurred. Upon the issuance of our mandate, the trial court entered a modified order for summary judgment. Both the State, by the State Highway Commissioner and the Treasurer, and the New Jersey Highway Authority appealed to the Appellate Division, which affirmed. We granted certification. 51 *N. J.* 190 (1968).

I

■■ The State and the New Jersey Highway Authority object to so much of the judgment as imposes liability for interest upon taxes. The Appellate Division noted that the judgment as originally entered provided for interest, and hence the issue should have been raised on the original appeal. This is so. Nonetheless, the State and a State agency being involved, it is appropriate to accept an issue which is important and which was not in fact argued, doubtless because of concentration upon the larger issue of liability for the principal taxes. In fact, as to the State, the payment will depend upon an appropriation, as we will point out in II below, and the Legislature not being compellable in this regard and our judgment being in that respect merely declaratory, it is fitting that our declaration be modified or withdrawn if it inadvertently suggests a liability which on the merits should not exist. And as to the New Jersey Highway Authority, we note that it signed a stipulation with the City that "if final judgment is entered establishing the validity of the tax lien of the City of East Orange, then the New Jersey Highway Authority shall pay and discharge all said liens with interest as allowed by law," which stipulation could arguably support the thought that the subject of in-

terest would await a decision as to the tax lien itself. We should not be understood to encourage piecemeal handling of litigation; our policy is strongly the other way. We mention these circumstances because they lend some additional support for our primary conclusion that the public interest requires us to accept the issue at this late stage.

### A.

█ The City relies upon *N. J. S. A.* 54:4–67, which provides that a municipality may fix the rate of interest for nonpayment of taxes, which rate may not exceed 8% per annum. The State answers that the statute did not contemplate the State as a taxpayer, but rather had in mind the ordinary taxpayer who failed to pay. This is not to say that interest is penal. On the contrary it is basically compensatory, *Jersey City v. Zink,* 133 *N. J. L.* 437, 444 (*E. & A.* 1945), *certiorari* denied, 326 *U. S.* 797, 66 *S. Ct.* 493, 90 *L. Ed.* 485 (1946), but the rate is designedly such that it will not be worth the taxpayer's while to make the municipality his involuntary banker. Thus interest serves to induce timely payment. The question, then, is whether the Legislature intended such a measure to apply where the failure to make timely payment would ordinarily be due to the failure of the Legislature itself to appropriate money.

██ In this inquiry, it is not controlling that interest will be imposed against the local collector upon the sum he fails to remit to the county, *N. J. S. A.* 54:4–76; *Ross v. Walton,* 63 *N. J. L.* 435 (*Sup. Ct.* 1899), affirmed o. b., 67 *N. J. L.* 688 (*E. & A.* 1902); *Booth v. Parnell,* 12 *N. J. Misc.* 413, 418, 172 *A.* 50 (*Sup. Ct.* 1934), for again reason exists to induce municipal corporations to meet their obligations. But the State has always stood apart in such matters, and it is the general rule that a State is not liable for interest unless by statute or contract it has assumed that liability. Annotation, 24 *A. L. R. 2d* 928, 934 (1952); *Safeway Trails, Inc. v. Furman,* 77 *N. J. Super.* 26 (*Law*

*Div.* 1962), affirmed, 41 *N. J.* 467 (1964). The Legislature has not evidenced an intent that the State pay interest in these circumstances. In another situation, of some persuasive force here, the Legislature affirmatively negated an obligation to pay interest. Thus in subjecting certain State-owned lands to local taxation, the statute expressly said the payment shall be made "without interest." *N. J. S. A.* 54:4–2.1.

██ Hence we conclude that the power vested in municipalities, *N. J. S. A.* 54:4–67, to fix a rate of interest on delinquent taxes should not be read to apply against the State. This does not mean that if the State acquires property upon which local taxes are in arrears and interest thereon has already accrued, the accrued interest will thereupon fall away. The State does not ask for that result. In the past it expressly required the seller to pay the local taxes with interest up to the passage of title. We are dealing only with the question whether interest will continue to accrue against property after the State's acquisition of title, and as to this question, the answer must be that the State's property cannot be so burdened unless the Legislature indicates its consent. Here it has not.

### B.

██ As to the New Jersey Highway Authority, different considerations come into play. The Authority is an agency of the State itself, created to achieve an important governmental aim. Its mission is the construction and operation of a highway, on a self-sustaining toll basis. It is "a body corporate and politic," but unlike the municipal corporation, the Authority serves only a State, as distinguished from a local, purpose, and is "in the State Highway Department," and thus "in" the State government itself. *N. J. S. A.* 27:12B–4. The statute provides that "the Authority shall not be required to pay any taxes or assessments upon any project or any property acquired or used by the Authority under the provisions of this act." *N. J. S. A.* 27:12B–16. But unlike

the State itself which pays out of appropriations, the Authority has the power and duty to pay proper operating charges out of revenues, and it may be sued, *N. J. S. A.* 27 :12B–5 (*d*). Thus there is no conceptual impediment to a finding of a legislative intent that the Authority meet out of revenues its obligations to other public agencies and pay interest if it fails to perform on time. Nonetheless we cannot find in the statute sufficient evidence that the Legislature intended in *N. J. S. A.* 54 :4–67 to deal with the situation in which the delay in payment was due to a serious dispute as to the statutory authority of a State agency to pay and thus to supersede principles the courts would otherwise invoke in such circumstances.

The case therefore should be decided on the conventional rules concerning the subject. Interest, apart from a contractual promise to pay it, is not the unqualified right of the prevailing litigant. It is awarded as damages for delay in payment. It may be denied where equity so suggests. Here a State agency in good faith concluded it occupied the State's position as to municipal taxes on property the agency acquired, and that the taxes abated *pro rata* as of the date of acquisition by it. Considering the reasonableness of the Authority's resistance to the City's demand, the essential governmental nature of the Authority, and its intimate relation to the State itself, we believe it is just to agree with the Authority's position that interest should not be imposed on the principal tax liability for the period between the Authority's acquisitions and the date of our judgment in *East Orange v. Palmer, supra,* 47 *N. J.* 307 (1966). See *Consolidated Police and Firemen's Pension Fund Comm. v. Passaic,* 23 *N. J.* 645 (1957) ; *Universal C.I.T. Credit Corp. v. Paramus,* 93 *N. J. Super.* 28 (*App. Div.* 1966), certif. denied, 48 *N. J.* 580 (1967) ; *Jardine Estates v. Donna Brook Corp.,* 42 *N. J. Super.* 332 (*App. Div.* 1956) ; *McGlynn v. Schultz,* 90 *N. J. Super.* 505 (*Ch. Div.* 1966), affirmed, 95 *N. J. Super.* 412 (*App. Div.* 1967), certif. denied, 50 *N. J.* 409 (1967). Nor should the result be other-

wise because the Authority entered into a stipulation during the litigation to pay the balance of the taxes if the City should prevail "with interest as allowed by law." There was no unqualified agreement to pay interest. Rather the reference was to what the law would allow.

## II

The State complains of so much of the modified order entered after our mandate went down as reads that plaintiffs' motion is granted for summary judgment "ordering and compelling (a) defendant State Highway Commissioner Dwight R. G. Palmer and State Treasurer John A. Kervick to pay, discharge and satisfy all unpaid property taxes * * *." The objection runs to an order compelling payment in the absence of a legislative appropriation.

In this respect, the modified order for judgment repeats the order as originally entered. On the first review we expressly refrained from discussing that provision, saying that "the State refers to it only in connection with its contention that the action is not maintainable at all," and adding that we assumed "adequate funds are available through the annual blanket appropriations for highway construction, which necessarily includes all costs of land acquisition." *City of East Orange v. Palmer, supra,* 47 *N. J.,* at 330.

The State assures us that payment will be made but insists that no appropriation is presently available. The State's objection is technically sound. The courts cannot order money "drawn from the State Treasury but for appropriations made by law," *N. J. Const., Art.* VIII, § II, par. 2; *Fitzgerald v. Palmer,* 47 *N. J.* 106, 108 (1966); *O'Neill v. State Highway Department,* 50 *N. J.* 307, 315–316 (1967). Hence a judgment should do no more than adjudge the liability when, as here, the availability of appropriated funds is questioned, and in such circumstances an order upon the State Treasury should not be entered until it is determined, upon a supplemental application in the

cause, that payment can constitutionally be made. The judgment should be modified accordingly.

The judgment of the trial court is modified as aforesaid with respect to interest and with respect to the form of the judgment against the State, and as so modified, the judgment is affirmed without costs.

*For affirmance and modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For reversal*—None.