221 N.J. Super. 89 (1987)
534 A.2d 13
PRIVATE TRUCK COUNCIL OF AMERICA, INC., PPG INDUSTRIES, INC., W.H. CHRISTIE & SONS, INC., AND DENNIS TRUCKING, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS,
v.
STATE OF NEW JERSEY, AND CLIFFORD W. SNEDEKER, INDIVIDUALLY AND AS DIRECTOR, DIVISION OF MOTOR VEHICLES, AND MICHAEL HORN, INDIVIDUALLY AND AS STATE TREASURER OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
WEST MOTOR FREIGHT, INC. AND WEST TRUCK LEASING, INC., PLAINTIFFS-APPELLANTS,
v.
CLIFFORD W. SNEDEKER, DIRECTOR OF THE DIVISION OF MOTOR VEHICLES OF THE STATE OF NEW JERSEY, AND MICHAEL M. HORN, TREASURER OF THE STATE OF NEW JERSEY, AND THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 1987.
Decided March 31, 1987.
*90 Before Judges PETRELLA, BILDER and GAYNOR.
*91 Richard A. Allen argued the cause for appellants in A-1145-85T1 (Arnold L. Simon, attorney; Jacob P. Billig, Terrence D. Jones, David F. Smith and Richard A. Allen, on the brief).
Martin L. Wheelwright, Deputy Attorney General, argued the cause for respondents in A-1145-85T1 (W. Cary Edwards, Attorney General of New Jersey, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; Mary R. Hamill, Deputy Attorney General, on the brief).
Brown & Connery and Kohn, Savett, Marion & Graf admitted pro hac vice, attorneys for appellants in A-1559-85T1 (Merle A. Wolfson and Joseph M. Yohlin, of counsel; Steven G. Wolschina and David H. Weinstein, pro hac vice, on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondents in A-1559-85T1 (Michael R. Clancy, Deputy Attorney General, of counsel; Mary R. Hamill, Deputy Attorney General, on the brief).
BILDER, J.A.D.
This appeal involves the constitutionality of the Counterpart Fee Act, N.J.S.A. 39:3-6, which imposes a retaliatory fee or tax on trucks operating in New Jersey which are registered in one of eighteen states which impose so-called "third structure taxes" on trucks registered in New Jersey, a tax which New Jersey does not impose. Plaintiffs, a motor carrier trade organization and individual motor carriers,[1] contend the act violates the Commerce Clause, U.S. Const. Art I, § 8, cl. 3, and the Privileges and Immunities Clause, U.S. Const. Art. IV, § 2, of *92 the United States Constitution. The Law Division upheld the act on the ground that the matter had been decided in B & L Motor Freight, Inc. v. Heymann, 120 N.J. Super. 270 (Ch.Div. 1972), aff'd o.b. 125 N.J. Super. 372 (App.Div. 1973), certif. den. 64 N.J. 494 (1974), appeal dis. 419 U.S. 1042, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974), reh. den. 420 U.S. 913, 95 S.Ct. 837, 42 L.Ed.2d 845 (1975). Concluding that he was bound by that decision, the trial judge granted the defendants a summary judgment dismissing the action, 210 N.J. Super. 611. On appeal plaintiffs contend B & L is not controlling because it did not decide the issues presented in this case and that, in any event, B & L must yield to subsequent case law  supervening doctrinal developments. Substantively they contend the counterpart fees violate the Commerce Clause because they discriminate against interstate commerce, are not fairly related to services provided by New Jersey and are retaliatory or coercive; and, further, that they violate the Privileges and Immunities Clause because they discriminate against the citizens of other states. Finally, they contend that as a consequence of the unconstitutionality of the fees, plaintiffs are entitled to refunds of the monies unlawfully collected as well as counsel fees and costs under the federal Civil Rights Act, 42 U.S.C. § 1983.

I.
The fees in question, counterpart fees, are imposed as part of the registration and licensing provisions of our motor vehicle laws. They are referred to as "third structure" fees because they are in addition to the two types of fees or taxes imposed by all 50 states on interstate trucks operating within their borders: motor fuel taxes (first structure) and registration fees (second structure). These additional taxes are imposed by some eighteen states for highway use. In Pennsylvania, for example, the third structure tax takes the form of a tax of $36 per axle. In other states it takes the form of a flat per-truck or per-tractor-trailer unit charge.
*93 In order to eliminate this burden on New Jersey trucks, by either encouraging reciprocal agreements exempting our vehicles or eliminating the taxes entirely, New Jersey adopted the Counterpart Fee Act which imposes a retaliatory tax or fee on trucks which use our highways and are registered in one of the states which impose third structure taxes on trucks registered in this state.
Except as otherwise provided by reciprocity agreement or arrangement entered into by the director [Division of Motor Vehicles] or by a declaration issued by him, no motor vehicle or motor-drawn vehicle registered in another jurisdiction which requires the payment of a registration fee or fees or taxes of any other nature from an owner of a similar vehicle properly registered in this State for the operation of such vehicle on the highways of such other State, shall be operated on the highways of this State unless a fee is paid to the director, equal in amount to the fee or tax collected by the authorized official or body of such other jurisdiction for the operation on its highways of the motor vehicle or motor-drawn vehicle properly registered in this State. In the event that the fee or tax collected by such other jurisdiction is imposed for the registration of the vehicle therein, then in no case shall the fee paid to the director be less than the amount now or hereafter provided for by the laws of this State for the registration of a similar vehicle. The director shall from time to time promulgate such regulations as may be necessary for the effective enforcement of this section. [N.J.S.A. 39:3-6]
Similar statutes were enacted in six other states. In two, Maine[2] and New Hampshire[3], they have been found unconstitutional; in New Hampshire the statute had already been repealed.

II.
As already noted, the Law Division never considered plaintiffs' substantive claims of unconstitutionality because it concluded that the matter had been decided in B & L. While we entertain doubts about whether the discrimination question was decided in that case, we need not decide the issue because we *94 are satisfied that in any event B & L must yield to supervening doctrinal development, see Hicks v. Miranda, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975), which requires a different result.

III.
The fundamental law against which the constitutionality of the challenged law must be tested was succinctly set forth by Justice Brennan in A & P Tea Co. v. Cottrell, 424 U.S. 366, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976):
"[t]he very purpose of the Commerce Clause was to create an area of free trade among the several States." And at least since Cooley v. Board of Wardens, 12 How. 299, 13 L.Ed 996 (1852), it has been clear that "the Commerce Clause was not merely an authorization to Congress to enact laws for the protection and encouragement of commerce among the States, but by its own force created an area of trade free from interference by the States.... . [T]he Commerce Clause even without implementing legislation by Congress is a limitation upon the power of the States." It is no less true, of course, that under our constitutional scheme the States retain "broad power" to legislate protection for their citizens in matters of local concern such as public health, and that not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the States. Rather, in areas where activities of legitimate local concern overlap with the national interests expressed by the Commerce Clause  where local and national powers are concurrent  the Court in absence of congressional guidance is called upon to make "delicate adjustment of the conflicting state and federal claims," thereby attempting "the necessary accommodation between local needs and the overriding requirement of freedom for the national commerce." In undertaking this task the Court, if it finds that a challenged exercise of local power serves to further a legitimate local interest but simultaneously burdens interstate commerce, is confronted with a problem of balance:
"Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."
[A & P Tea Co. v. Cottrell, supra at 370-372, 96 S.Ct. at 927-928; citations omitted]

*95 IV.
Under the Commerce Clause a state tax will be sustained if (1) there is a sufficient nexus with the taxing state; (2) the tax is fairly apportioned to local activities and does not result in multiple burdens being placed on the taxpayer; (3) the tax does not discriminate against interstate commerce; and (4) the tax is fairly related to the services and benefits provided by the taxing state to the taxpayer. See Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977), reh. den. 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977); Continental Trailways v. Director, Div. of Motor, 102 N.J. 526, 535 (1986), pet. for cert. filed Oct. 24, 1986. Plaintiffs contend the counterpart fees violate the third part of this test because they discriminate against interstate vehicles registered in the eighteen offending states for the benefit of New Jersey-registered vehicles. The discrimination is apparent and unquestionable. The fees have the effect of giving New Jersey-registered trucks a commercial advantage over their out-of-state competition from the eighteen states. See Continental Trailways, supra at 541. It also discriminates between foreign trucks by giving trucks from the non-offending states a similar advantage over competition from the eighteen states. Ibid.
The State suggests that the fees are not discriminatory because they are offset by other taxes on our trucks. See discussion of offset, id. at 544. However, other than a general argument that all three levels of the motor vehicle fees should be considered together, it cannot point to any particular compensating fee which offsets the inherently discriminatory effect of the counterpart fees. They are not imposed to fairly apportion the burden of the cost of state government but are intended to coerce certain states into abandoning conduct which New Jersey finds offensive to the endeavors of our registered trucks engaged in interstate commerce  they prevent discrimination against our trucks. Nor can the fees be found to equalize the tax burden between interstate and intrastate carriers, because *96 to do this the counterpart fees would have to apply to motor vehicles registered in all foreign states.
The purpose alone of the challenged statute requires its demise. As earlier noted, taxes affecting interstate commerce must effectuate a legitimate local public interest. See A & P Tea Co. v. Cottrell, supra. Retaliatory legislation has been clearly rejected as a means of accomplishing state regulatory objectives. Id. at 379-380, 96 S.Ct. at 931-932; Private Truck Council v. Secretary of State, supra at 218; Private Truck Council of America v. State, supra 517 A.2d at 1154. Neither retaliation nor the economic protection of local interests is a legitimate purpose such as will support an intrusion on interstate commerce. The State concedes, as it must, that the purpose of the statute is to secure reciprocity; to induce other states not to impose third structure taxes on New Jersey registered vehicles. As already noted, in two jurisdictions where similar legislation has been examined, counterpart fees have been held unconstitutional.[4]See Private Truck Council v. Secretary of State, supra; Private Truck Council of America v. State, supra.
Since we are satisfied the clearly retaliatory use of the tax dooms it constitutionally, we deem it unnecessary to engage in the essentially academic exercise of considering plaintiffs' other contentions which, at best, would merely add alternative grounds to the result we have reached. We note in passing, however, that when these grounds were considered by the Maine and New Hampshire courts, they were also found to be *97 appropriate bases for striking down third structure retaliatory motor carrier fees. Ibid.

V.
Having concluded the tax is unconstitutional, we must now consider plaintiffs' claims to refunds and counsel fees. Plaintiffs concede that their claim of a statutory right to refunds has been foreclosed by Continental Trailways, supra 102 N.J. at 546; however, they seek the refunds on equitable and constitutional grounds. As did our Supreme Court in Continental Trailways, we find no evidence the fees were paid under duress or protest prior to the institution of this litigation, id. at 549-550; see also Private Truck Council v. Secretary of State, supra at 219; Private Truck Council of America v. State, supra 517 A.2d at 1155-1156; however, once the complaint was filed, they could no longer be looked upon as volunteers.[5] Accordingly, we find plaintiffs are entitled to refunds from that time. Such refunds shall be without interest, it being the general rule that the State is not liable for interest in the absence of a statutory provision. See City of East Orange v. Palmer, 52 N.J. 329, 334 (1968).
As to the counsel fees, it is sufficient to note that 42 U.S.C. § 1983 was not intended to apply to this type of action. See Consol. Freightways Corp. of Del. v. Kassel, 730 F.2d 1139, 1145-1147 (8th Cir.1984), cert. den. 469 U.S. 834, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984); Private Truck Council v. Secretary of State, supra at 220-222; Private Truck Council of America v. State, supra 517 A.2d at 1156-1157.

VI.
Plaintiffs in the consolidated West Motor Freight suit additionally appeal from the trial court's denial of class certification *98 in their action. Their suit raised the identical issues already raised by the earlier suit which was certified as a class action. The judge's action was clearly not an abuse of discretion. See Percodani v. Riker-Maxson Corp., 51 F.R.D. 263, 265 (S.D.N.Y. 1970), aff'd sub nom Farber v. Riker-Maxson Corp., 442 F.2d 457 (2nd Cir.1971).
The decisions below are reversed; the counterpart fee is found to be unconstitutional. The ruling in A-1559-85T1 denying class certification is affirmed. The matter is remanded for further proceedings consistent with our opinion.
NOTES
[1] Two suits were brought, one by Private Truck Council of America, Inc. PPG Industries, Inc. W.H. Christie & Sons, Inc. and Dennis Trucking; the other by West Motor Freight, Inc. and West Truck Leasing, Inc. The two suits, essentially the same, were consolidated in the Law Division. In Private Truck the matter was certified as a class action. A similar motion in West Freight was denied. Their separate appeals are consolidated for the purpose of this opinion.
[2] Private Truck Council v. Secretary of State, 503 A.2d 214 (Me. 1986), cert. den. 476 U.S. 1129, 106 S.Ct. 1997, 90 L.Ed.2d 677 (1986).
[3] Private Truck Council of America v. State, 128 N.H. 466, 517 A.2d 1150 (N.H. 1986).
[4] At oral argument our attention was directed to a recent unreported decision of an Oklahoma District Court upholding a counterpart fee similar to New Jersey's. Private Truck Council of America, Inc. v. Oklahoma, District Court of the Seventh Judicial District (February 1987). The opinion relied exclusively on B & L Motor Freight, supra, a decision which we have concluded is inapplicable. We have not found any other decisions upholding such legislation, nor have any been called to our attention.
[5] Indeed, in their original complaint, plaintiffs sought to stay the collection of the fees.