214

PRIVATE TRUCK COUNCIL OF AMERICA, INC., PPG INDUS-
TRIES, INC., W.H. CHRISTIE & SONS, INC., AND DENNIS
TRUCKING, ON BEHALF OF THEMSELVES AND ALL OTH-
ERS SIMILARLY SITUATED, PLAINTIFFS-RESPONDENTS,
AND CROSS-APPELLANTS, v. STATE OF NEW JERSEY, CLIF-
FORD W. SNEDEKER, INDIVIDUALLY AND AS DIRECTOR,
DIVISION OF MOTOR VEHICLES, AND MICHAEL HORN, IN-
DIVIDUALLY AND AS STATE TREASURER OF NEW JERSEY,
DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.

WEST MOTOR FREIGHT, INC., AND WEST TRUCK LEASING,
INC., FOR THEMSELVES AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED, PLAINTIFFS-RESPONDENTS AND
CROSS-APPELLANTS, v. CLIFFORD W. SNEDEKER, DI-
RECTOR OF THE DIVISION OF MOTOR VEHICLES OF THE
STATE OF NEW JERSEY, AND MICHAEL M. HORN, TREA-
SURER OF THE STATE OF NEW JERSEY, AND THE STATE
OF NEW JERSEY, DEFENDANTS-APPELLANTS AND CROSS-
RESPONDENTS.

Argued February 17, 1988—Decided June 30, 1988.

*Mary R. Hamill,* Deputy Attorney General, argued the cause
for appellants and cross-respondents (*W. Cary Edwards,* Attor-
ney General of New Jersey, attorney; *Michael R. Clancy,*
Deputy Attorney General, of counsel).

*Richard A. Allen,* a member of the District of Columbia bar,
argued the cause for respondents and cross-appellants Private
Truck Council of America, Inc., et al. (*Solomon & Simon,*
attorneys; *Richard A. Allen* and *Arnold L. Simon,* on the
briefs).

*David H. Weinstein,* a member of the Pennsylvania bar,
argued the cause for respondents and cross-appellants West
Motor Freight, Inc., et al. (*Brown & Connery,* attorneys;
*David H. Weinstein* and *Steven G. Wolschina,* on the briefs).

PER CURIAM.

The judgment is affirmed substantially for the reasons expressed in the opinion of the Appellate Division, reported at 221 *N.J.Super.* 89 (1987).

O'HERN, J., has filed a separate dissenting opinion.

O'HERN, Justice, dissenting.

Once again the Court invalidates a tax that it thinks offends the Commerce Clause. In this case it invalidates New Jersey's counterpart third-tier tax on trucks that use our highways. In essence, the tax grants an exemption from taxation to truckers whose vehicles are registered in states that afford comity to New Jersey truckers. Otherwise it levels a tax equivalent in amount to that which the non-cooperating state would impose. The details of the cases are set forth in the two reported opinions below at 210 *N.J.Super.* 611 (Law Div.1985), *reversed,* 221 *N.J.Super.* 89 (App.Div.1987). I use the word "tax" because, although we deal with a counterpart fee imposed under the motor vehicle laws, *N.J.S.A.* 39:3-6, the case has been treated as though it involved a tax.

The tax is both a revenue measure and a policy measure. To the extent that it seeks to influence the policy of sister states it offends no principle of federalism.

> The mere fact that California seeks to promote its insurance industry by influencing the policies of other States does not render the purpose illegitimate. As we said in *United States Steel Corp. v. Multi-state Tax Comm'n,* 434 *U.S.* 452, 478, 54 *L.Ed.*2d 682, 98 *S.Ct.* 799 [815] (1978):
>
> > "Any time a State adopts a fiscal or administrative policy that affects the programs of a sister State, pressure to modify those programs may result. Unless that pressure transgresses the bounds of the Commerce Clause or the Privileges and Immunities Clause of Art IV, § 2, *see, e.g., Austin v. New Hampshire,* 420 *U.S.* 656 [43 *L.Ed.*2d 530, 95 *S.Ct.* 1191] (1975), it is not clear how our federal structure is implicated."
>
> [*Western and Southern Life Ins. Co. v. State Bd. of Equalization of California,* 451 *U.S.* 648, 671, [101 *S.Ct.* 2070, 2084] 68 *L.Ed.*2d 514, 532–33 (1981).]

Though invalidating Alabama's unequal tax burden on domestic versus foreign insurance companies, *Metropolitan Life Ins. Co. v. Ward,* 470 *U.S.* 869, 105 *S.Ct.* 1676, 84 *L.Ed.*2d 751 (1985), reaffirmed the legitimacy of a state's counterpart tax that deterred other states from enacting discriminatory excessive taxation. Alabama had asked for more: it had wanted the Court to approve a tax that would promote domestic business by penalizing foreign businesses that desired to do business in Alabama. "Alabama has made no attempt, as California did, to influence the policies of other States in order to enhance its domestic companies' ability to operate interstate; rather, it has erected barriers to foreign companies who wish to do interstate business in order to improve its domestic insurers' ability to compete at home." 470 *U.S.* at 877–78, 105 *S.Ct.* at 1681, 84 *L.Ed.*2d at 759.

Of course, these cases involve insurance, a field that Congress has preempted from Commerce Clause coverage; however, the basic policy question remains the same. A tax will fail if its aim is to promote domestic industry at the expense of foreign commerce. There is no hint whatsoever of that aim in this case. That the tax is defensive does not make it offensive to the Constitution.

The challenge to the tax must be that it " 'transgresses the bounds of the Commerce Clause or the Privileges and Immunities Clause * * *.' " *Western and S. Life Ins. Co. v. State Bd. of Equalization of California, supra,* 451 *U.S.* at 671, 101 *S.Ct.* at 2084, 68 *L.Ed.*2d at 532 (citation omitted). In *Complete Auto Transit, Inc. v. Brady,* 430 *U.S.* 274, 97 *S.Ct.* 1076, 51 *L.Ed.*2d 326 (1977), the United States Supreme Court abandoned altogether with respect to Commerce Clause analysis " 'the use of magic words or labels' [that] could 'disable an otherwise constitutional levy,' " *id.* at 284, 97 *S.Ct.* at 1082, 51 *L.Ed.*2d at 334 (citation omitted), and recognized that these no longer served an analytic function. The Court shifted its focus away from labels and toward "the question whether the tax

produces a forbidden effect." *Id.* at 288, 97 *S.Ct.* at 1084, 51 *L.Ed.*2d at 337.

Having replaced labels with economic reality, the Court developed a simpler, more straightforward approach, based on an analysis of the effects of the tax: the tax will be sustained against a Commerce Clause challenge when the tax (a) applies to an activity with a substantial nexus with the taxing state, (b) is fairly apportioned, (c) does not discriminate against interstate commerce, and (d) is fairly related to the services provided the taxpayer by the state.

The problem is that the tax in this case, like the tax in *Continental Trailways v. Director, Div. of Motor Vehicles,* 102 *N.J.* 526 (1986), looks like, sounds like, and reads like one that is discriminatory. It is understandable, then, for the Court to conclude that this tax is discriminatory because it sounds bad. We do not like retaliation. However painstaking the process is, the Court should look deeper than the appearance or label of the tax and consider whether the tax is in fact discriminatory. The question this Court must resolve is whether the tax provides "a direct commercial advantage to local business." *Northwestern States Portland Cement Co. v. Minnesota,* 358 *U.S.* 450, 458, 79 *S.Ct.* 357, 362, 3 *L.Ed.*2d 421, 427 (1959).

Going back, then, to the four-part test of *Complete Auto,* it is obviously conceded here that there is a substantial nexus with the taxing state. Whether the tax is fairly apportioned or fairly related to the services provided by the state requires a case-by-case analysis of the effect on the individual foreign trucker. Since this case has gone off on a broadsided attack of the statute presumably because of its label, we simply have no record whatsoever in the case to establish such effects.

The majority's point seems to be that the tax discriminates against interstate commerce. But I must respectfully ask them to demonstrate how the tax provides a "direct commercial advantage to local business." *Northwestern States Portland*

*Cement Co. v. Minnesota, supra,* 358 *U.S.* at 458, 79 *S.Ct.* at 362, 3 *L.Ed.*2d at 427.

If it be argued that the tax is bad because it is applied only to interstate carriers, the answer is that there is nothing wrong with that so long as the tax does not "produce[ ] a forbidden effect." *Complete Auto, supra,* 430 *U.S.* at 288, 97 *S.Ct.* at 1084, 51 *L.Ed.*2d at 337. In a unanimous opinion by Chief Justice Rehnquist, the Supreme Court recently restated that *"Complete Auto* abandoned * * * abstract notion[s]" about taxing interstate commerce, and required focus only on the four-part test. *D.H. Holmes Co. v. McNamara,* —— *U.S.* ——, ——, 108 *S.Ct.* 1619, 1623, 100 *L.Ed.*2d 21 (1988).

If it be said that it is cheaper for the domestic trucker than for an out-of-state trucker to do business in, let us say, the northern New Jersey market, then I suggest that we must compare the mile-by-mile costs of such truckers. Indeed, since to defray the expenses of road maintenance New Jersey has a graduated registration fee on commercial vehicles, *see State v. OJO Trucking Corp.,* 217 *N.J.Super.* 307 (App.Div.), *certif. granted* 109 *N.J.* 44 (1987), a sister-state trucker with low registration fees would have the commercial advantage in New Jersey over a domestic trucker.

In fact, the majority's result could put New Jersey's truckers at a disadvantage with border states. For example, assume that two truckers are operating in the Rockland County, New York area, one out of Hackensack and one out of Yonkers. If New York were to enact a fairly apportioned third-tier tax without reciprocal privileges in favor of New Jersey, New Jersey truckers doing business in New York would pay the third-tier tax if New York courts' view of policy was different from ours; the New York trucker operating in New Jersey would not pay the third-tier tax because of our Court's notions of tax policy. I assume for this syllogism that the majority's theory is that a counterpart fee is *per se* invalid. The Court adopts the holding of the court below that "[t]he purpose alone

of the challenged statute requires its demise," 221 *N.J.Super.* at 96, yet fails to provide a single Supreme Court citation to sustain the proposition that a counterpart tax is necessarily invalid.

The United States Supreme Court's most recent pronouncement on reciprocity taxation is not to the contrary. In *New Energy Co. v. Limbach,* —— *U.S.* ——, ——, 108 *S.Ct.* 1803, 1808, 100 *L.Ed.*2d 302 (1988), the Court unanimously reaffirmed that "reciprocity requirements are not *per se* unlawful," so long as the tax statutes "compl[y] with the minimum requirements of the Commerce Clause." That is precisely the view that I take. A reciprocity requirement is not *per se* unlawful; it becomes unlawful when it fails the "minimum requirements of the Commerce Clause," *i.e.,* the four-part test of *Complete Auto, supra.*

In *New Energy Company, supra,* the "out-of-state product [was] placed at a substantial commercial disadvantage through discriminatory tax treatment." at ——, 108 *S.Ct.* at 1808. Out-of-state ethanol costs more to market in Ohio than in-state ethanol. Here, the fees levied on out-of-state trucks (foreign registration fees plus possible third-tier taxes) may actually be less than those (domestic registration fees) charged for in-state trucks. However, since the Appellate Division found that the "purpose alone" required the demise of the third-tier tax, 221 *N.J.Super.* at 96, that comparison was never made.

There is, I recognize, a more subtle question in these cases. If New Jersey adopts by mirror image an invalid tax, such as a flat tax or an axle tax that is not fairly apportioned to the interstate burden, then that tax falls on that ground, but not on the reciprocity ground. For example, Pennsylvania has levied third-tier flat taxes that have been held invalid. *American Trucking Assocs., Inc. v. Scheiner,* 483 *U.S.* ——, 107 *S.Ct.* 2829, 97 *L.Ed.*2d 226 (1987). If the taxes are invalid in Pennsylvania because they bear no rational relationship to the burden

imposed on the state's roads, that reasoning should also invalidate such taxes in New Jersey.

This kind of analysis would require a tax-by-tax study. No such analysis was made in the record of this case. In addition, because of the procedural posture of the case, which was dismissed in the trial court on summary judgment and reversed in the Appellate Division without a factual hearing, we have no record concerning the economic burden of the tax on any foreign carrier.

There is also a strain of constitutional doctrine that protects an apparently discriminatory tax from attack when the state can identify a complementary exaction that cures the apparent discrimination. W. Hellerstein, *Complementary Taxes as a Defense to Unconstitutional State Tax Discrimination,* 39 *Tax Law* 405 (ABA 1986). Professor Hellerstein notes that regrettably the field is so complex that "an eminent professor of constitutional law * * * dropped the subject from his casebook [because] that 'pursuit of the intricacies of state taxation * * * would require more time and space than the undertaking warrants.'" (citation omitted) (footnote omitted).

I know that this is not an uplifting subject and that it would require a great deal more time and effort to develop the kind of record that would enable the Court to make a valid constitutional judgment on this issue. I realize too that the entire issue is no longer much of a problem. There are only five states that continue to impose these third-tier taxes, but we need not distort constitutional doctrine in order to dispatch this pesky problem.

Judge Lasser had this case exactly right in his trial court opinion. The matter had been settled by the decision in *B. & L. Motor Freight, Inc. v. Heymann,* 120 *N.J.Super.* 270 (Ch.Div. 1972), *aff'd o.b.,* 125 *N.J.Super.* 372 (App.Div.1973), *certif. denied,* 64 *N.J.* 494 (1974), which struck down a direct challenge to the counterpart truck tax at issue here. The majority seems to assume that doubt has since been cast on that result by

substantial changes in federal doctrine. If anything, federal doctrine on the taxation of interstate commerce has moved much more towards economic analysis than towards labels.

As Judge Lasser pointed out, the counterpart fee act does not discriminate against nonresidents in favor of New Jersey residents. The act is triggered by the truck's place of registration, and has nothing to do with the residence or nonresidence of the carrier. It thus does not offend the Privileges and Immunities Clause. The majority's reliance on the purported Commerce Clause doctrinal change in *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 *U.S.* 366, 96 *S.Ct.* 923, 47 *L.Ed.*2d 55 (1976), is totally misplaced. That case involved the invalidation of a Mississippi health regulation that sought to reduce the health standards of a foreign state as a condition of Mississippi's accepting the foreign state's milk: "Mississippi is not privileged under the Commerce Clause to force its own judgments as to an adequate level of milk sanitation on Louisiana at the pain of an absolute ban on the interstate flow of commerce in milk." *Id.* at 380, 96 *S.Ct.* at 932, 47 *L.Ed.*2d at 65. There is no parallel to this case where New Jersey mirrors the foreign state's regulatory standards. Justice Brennan, who wrote the unanimous opinion for the Court in *Cottrell*, also wrote the *Western and Southern* opinion for the Court upholding the reciprocal taxes involved there.

In short, the purpose of the Act, the very theory relied on by the majority to conclude that the Act discriminates against interstate commerce, suggests the contrary. The purpose of the Act is to secure reciprocity and to induce other states not to impose third-structure taxes on New Jersey–registered vehicles. 210 *N.J.Super.* 611. There is nothing constitutionally wrong with that policy. If it is bad tax policy or bad business policy, the problem is one for legislatures. We are limited to invalidating taxes that clearly offend the Constitution. I see no economic proof of favoritism to local business in the local market.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, GARIBALDI and STEIN—6.

*For reversal*—Justice O'HERN—1.