785 A.2d 484 (2001)
345 N.J. Super. 456
CRUSADER SERVICING CORP., Plaintiff,
v.
CITY OF WILDWOOD, a Municipal Corporation of the State of New Jersey; Faith E. Wilson, C.T.C.; M. Brian Stead and Nancy C. Cunningham, Defendants.
Superior Court of New Jersey, Law Division.
Decided June 12, 2001.
*485 Adam D. Greenberg, Voorhees, for plaintiff (Honig & Greenberg).
John R. Rauh, Rio Grande, for defendant City of Wildwood (Gorman & Rauh).
Chad M. Sherwood for defendants M. Brian Stead, Nancy C. Cunningham (Paul J. Baldini, P.A.).
CALLINAN, J.S.C.
This case comes before the court as a case of first impression.
Plaintiff, Crusader Servicing Corporation, is the holder of a tax sale certificate issued by the City of Wildwood. Defendants, M. Brian Stead and Nancy C. Cunningham, are the owners of a residential property located at 144 W. Andrews Avenue in the City of Wildwood, and identified as Block 60, Lot 90 on the Wildwood City Tax Map. During the years 1995 through 1997 these property owners fell into arrears on their municipal taxes on that property. The property was listed by the city for a tax certificate sale, scheduled for September 29, 1997. On Friday, September 26, the taxpayer delivered a certified check in full payment of their arrearage in order to prevent the sale of the certificate. The check was deposited in the Wildwood account on September 29, the day of the tax sale. The clerk, however, failed to take steps in order to prevent the sale of the certificate. The certificate was sold to the plaintiff herein. The plaintiff thereafter began to pay the taxes on the subject property from 1997 through June 2000. The plaintiff first determined that the taxes were delinquent and then *486 paid them, requesting and obtaining a receipt from the City Tax Collector. For almost three years the tax collector of the City of Wildwood accepted the payment of taxes by the lienholder and provided the requested receipts for said payments.
The lienholder was not informed of the fact that the taxpayer had timely paid the original tax arrearage which payment negated the sale of the tax sale certificate. The amount that the plaintiff paid for the tax sale certificate was $1,629.56.
Obviously from what has been recited, the property owners did not remain current in the payment of their taxes between October 1997 and June 2000. The plaintiff during that period paid an additional $6,776.74 in taxes and fees in order to protect their investment. The property owners allege that they attempted to make tax payments during this interim but the payments were refused by the tax collector. It appears that they did attempt to make at least one payment, but when faced with the city's refusal to accept that payment, they retreated into the shadows and remained dormant for almost three years. The owner-defendants certainly did not press the issue in keeping with their long history of tax delinquency.
In the summer of 2000, the plaintiffs sent the statutory pre-foreclosure notices to the property owners. The property owners retained an attorney who, on September 11, 2000, sent a letter to the both the city and the plaintiff advising them of the erroneous sale of the tax certificate. On September 18, 2000, the tax collector sent the plaintiff a letter admitting the City's mistake and advising the plaintiff that they would obtain a resolution to cancel their certificate and reimburse Crusader at "[T]he legal rate of interest ..." on the amount owed.
On September 21, 2000, Crusader wrote back to the City Tax Collector and advised that the rate of interest was not sufficient. The position of Crusader is that they must be refunded all monies paid on the following basis: Any taxes not validly due should be refunded at the 5.5% interest rate. That would apply to the amounts initially paid by the plaintiff in the mistaken view that it was obtaining a bona fide tax sale certificate. However, any real estate taxes or fees validly paid thereafter by Crusader are subject to statutory interest and should bear interest at 8% for the first $1,500 and 18% thereafter which is the rate (hereinafter "8/18") adopted by the City pursuant to N.J.S.A. 54:4-67. The latter rates are applicable to any subsequent expenditures made by the plaintiff in order to protect his tax sale certificate status, by keeping the real property tax payments current. N.J.S.A. 54:5-60, N.J.S.A. 54:4-67(c).
All three parties move for summary judgment on the issue as to the proper rate of interest that the tax certificate holder may receive on monies advanced.

SUMMARY JUDGMENT
Summary judgment is appropriate if the pleadings, information supplied during discovery, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954). The purpose of summary judgment motions is to expedite matters and to avoid fruitless and frivolous litigation. R. 4:46-1 et seq. The essence of the summary judgment inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 536, 666 A.2d 146 (1995). This process requires a weighing that involves a *487 type of evaluation, analysis and sifting of evidential materials in search of a genuine issue of material fact. On a motion for summary judgment the court must grant all favorable inferences to the non-movant. When evidence is so one-sided that one party must prevail as a matter of the law the trial court should not hesitate to grant summary judgment. It is critical, however, that a trial court should not "shut a deserving litigant from his [or her] trial." Id., at 540, 666 A.2d 146. Citing Judson, supra 17 N.J. at 77, 110 A.2d 24.
At oral argument on this motion the property owners revealed that they had agreed in principle to a settlement with the City. The property owners at argument requested that the rate be set at 0%, the City requested the rate be governed by R 4:42-11, and Crusader demanded the rate as to taxes paid be governed by N.J.S.A. 54:4-67(c) and N.J.S.A. 54:5-60. The issue for this court to decide is which rate is correct. This court rules that the position of the Crusader is correct.
The tax sale law is to be liberally construed as remedial legislation to encourage the barring of the right of redemption by actions in the superior court to the end that marketable titles may thereby be secured. N.J.S.A. 54:5-85. Every citizen is charged with the responsibility of the payment of real property taxes with serious consequences attendant on their default.
Everybody knows that taxes must be paid. True, there may be instances in which the individual concerned is unaware of his property interest, but such cases are rare. Usually the owner omits to pay knowing the end result will be a tax sale. It is therefore understandable that the Legislature found in fair to bar the right to redeem by a strict foreclosure, i.e. by a judgment that payment be made by a fixed date, in default of which the right to redeem shall end, rather than by a sale as in the case of the foreclosure of a mortgage.

[Bron v. Weintraub, 42 N.J. 87, 92, 199 A.2d 625 (1964).]
A brief review of the statutes reveal the procedure established by our legislature to facilitate the collection of taxes.
The New Jersey tax sale law, N.J.S.A. 54:5-1 et seq., is a remedial statute and is liberally construed to effectuate its purpose of aiding municipalities in the collection of real estate taxes. N.J.S.A. 54:5-3. When a property owner fails to pay property taxes, the amount due and owing becomes a lien on his property and not a personal liability of the taxpayer. This lien for the amount of taxes due plus interest, penalty and costs, is a first priority lien. N.J.S.A. 54:5-9.
N.J.S.A. 54:5-19 provides:
When unpaid taxes or any municipal lien, or part thereof, on real property, remains in arrears on the 11th day of the eleventh month in the fiscal year when the same became in arrears, the collector or other officer charged by law in the municipality with that duty, shall, subject to the provisions of the next paragraph, enforce the lien by selling the property in the manner set forth in this article, provided that the sale is conducted no earlier than in the last month of the fiscal year.
N.J.S.A. 54:5-32 provides:
The sale shall be made in fee to such person as will purchase the property, subject to redemption at the lowest rate of interest, but in no case in excess of 18% per annum. If at the sale a person shall offer to purchase subject to redemption at a rate of interest less than 1%, he may, in lieu of any rate of interest to redeem, offer a premium over and above the amount of taxes, assessments or other charges, as in this chapter specified, *488 due the municipality, and the property shall be struck off and sold to the bidder who offers to pay the amount of such taxes, assessments or charges, plus the highest amount of premium.
The statute requires a municipal tax collector faced with a taxpayer whose taxes remain in arrears to "[E]nforce such lien by selling in the manner in this article provided." N.J.S.A. 54:5-19.
The plaintiff, by purchasing the tax sale certificate, is entitled to a specified rate of return on the investment together with all associated costs, such as the payment of additional taxes, etc. It is generally the expectation of a tax sale certificate purchaser that the tax sale certificate will be redeemed at a profit to the holder. These certificates are assignable. N.J.S.A. 54:5-54. Generally, foreclosure is not anticipated although it is a possibility that must be anticipated and great care must be taken in the selection of property on which to bid.
A purchaser, at a tax sale, acquires fee simple title subject to redemption at the lowest rate of interest paid at the sale. N.J.S.A. 54:5-32. The tax sale certificate may be recorded as a mortgage with the county recording office. N.J.S.A. 54:5-50. However, the purchaser of the tax sale certificate has no right to the possession of the property and may not obtain possession of the property, absent foreclosure, as specified by the statute. Interest accrues on the amount of the certificate at the rate bid by the purchaser, up to a maximum of 18%. N.J.S.A. 54:5-32. The statute provides that in the interim, the non-municipal purchaser may also remit payment for subsequent taxes due and may carn interest on the subsequent payment, as well. N.J.S.A. 54:5-60. N.J.S.A. 54:4-67 and N.J.S.A. 54:5-60 control the interest rate for the subsequent payment of taxes by the certificate holder; that interest rate has a ceiling of 8% on any delinquency under $1500, and 18% on all sums over that amount and the municipality must set that rate by resolution. In this case, the City of Wildwood adopted the 8/18% rate or the statutory ceilings for their municipality. The computation pursuant to N.J.S.A. 54:4-67(c) is computed on all amounts past due for all taxing periods. This statutory rate of interest is substantial, but not without a purpose. It is designed to discourage the taxpayer from utilizing the municipality as a source of short-term low interest loans. See City of East Orange v. Palmer, 52 N.J. 329, 334, 245 A.2d 327 (1968). It is the public policy of New Jersey to favor the foreclosure of these liens so as to assist the municipality in the collection of delinquent taxes. Lonsk v. Pennefather, 168 N.J.Super. 178, 182, 402 A.2d 259 (App.Div.1979). The legislative scheme is intended to transfer the burden of foreclosure from a municipality, whose primary occupation is governance, to private individuals. Simon v. Deptford Tp., 272 N.J.Super. 21, 26, 639 A.2d 328 (App.Div.) certif. denied, 137 N.J. 310, 645 A.2d 139 (1994).
A taxpayer faced with the task of redeeming a tax sale certificate must remit the principal amount plus interest, together with "[A]ll sums for subsequent taxes, municipal liens and charges, and interest and costs thereon." N.J.S.A. 54:5-60. Various permitted costs are specified by N.J.S.A. 54:5-61, including a search fee and a recording fee. If a foreclosure action has been filed, additional costs may be assessed by the court. N.J.S.A. 54:5-98, N.J.S.A. 2A:15-59. See R. 4:42-9(a)(5) and R. 4:42-10. A private individual purchaser may, after two years from the date of sale, institute an action to bar the right of redemption by way of a strict foreclosure action filed in the Chancery Division of the Superior Court. In such an action, *489 the plaintiff submits his proofs and asks the court to fix the amount, time and place for redemption. If no redemption is made by that deadline, final judgment is entered and the tax sale certificate holder is vested with an estate of inheritance in fee simple, free and clear of all liens.
This is not the first case in which a municipality improperly sold a tax lien. Normally the error is quickly discovered and the purchaser of the certificate is reimbursed for monies paid in the acquisition of the certificate together with interest at the "lawful" rate. The cases hold that the amount of interest in an absence of statutory authority may be set by the court as an exercise of its equitable power. Exercising that power, Brinkley set that rate to be as set forth in R. 4:42-11. Brinkley v. Western World, Inc., 281 N.J.Super. 124, 129, 656 A.2d 872 (Ch.Div.1995) (Brinkley I) aff'd as modified and remanded, 292 N.J.Super. 134, 678 A.2d 330 (App.Div. 1996) (Brinkley II). In the present case that rate is 5% and 5.5% depending on the applicable time period and is not in dispute. Crusader agrees that the $1,629.56 paid by them for the certificate should bear that rate of interest as there is no statute that governs the repayment of an invalid tax sale certificate. The payment to Crusader is simply not a "redemption" where the interest rate would be governed by statute. To treat the debt in the same manner of a judgment is reasonable.
It is the rate of interest to be attributed to the tax payments made after the acquisition of the certificate that produces disagreement and for which no decisional authority can be found. The City argues that the R. 4:42-11 rate should continue to control the issue. Crusader maintains that the statutory rate of 8/18% should be applied to those outlays as the rate of interest for the redemption of those taxes not paid by the property owner is controlled by N.J.S.A. 54:4-67(c). It is obvious that, when the City receives tax payments from whatever source, their interest is satisfied. Ramos v. City of Passaic, 19 N.J.Tax 97, 104-105 (Tax 2000). Here the certificate holder paid these taxes with the justifiable expectancy of being redeemed at the statutory rate of interest. The City is not without fault here nor are the property owners. The City is at fault for placing Crusader in the position of an invalid certificate holder, not informing them of their mistake and (if the property owner's bare allegation is accepted) not accepting the proffered tax payment(s). The property owners are at fault for not timely paying their taxes or taking the time to find out what the actual situation was with respect to their tax obligations. In any event the property owners should have fully expected to be liable for interest at the 8/18% rate on taxes unpaid for almost three years.
Equity will generally conform to established rules and precedents and will not change or unsettle rights that are created and defined by existing legal principles. This is the basis for the equitable maxim "equity follows the law," which instructs that as a rule a court of equity will follow the legislative and common-law regulations of rights, and also obligations of contract. Natovitz v. Bay Head Realty Co., 142 N.J.Eq. 456, 463-64, 59 A.2d 423 (E. & A.1948).
If the City were to reimburse Crusader for property taxes paid, the taxes would be in arrears. Normally the City would be entitled either to collect statutory interest from the delinquent taxpayer or to conduct a tax certificate sale at which sale the interest would be collected. The property owners have enjoyed the use of the tax money through the period of their delinquency. The City has had the use of Crusader's funds during this period. Crusader is the only party not at fault. In *490 these motions the court is merely asked to determine an appropriate rate of interest to be applied to the tax monies advanced by Crusader. The City has implicitly admitted that it was negligent in allowing the matter to proceed to tax sale and not thereafter notifying Crusader of its mistake. The property owners have admitted that they did not pay their property taxes in a timely fashion. Their allegation of a good faith attempt to do so borders on fantasy given their past history of delinquencies and their willingness to allow almost three years to go by without making a payment. It took Crusader's initiation of foreclosure proceedings to arouse them from their slumber. In the meantime, Crusader was induced to believe that the tax payments that they were making constituted a protected and prudent investment under the statutes.
In any case, the property owners and the City have agreed upon a settlement. The only claims remaining are those of Crusader. The holding here is that Crusader is entitled to be reimbursed at the statutory rate of interest that they relied upon in advancing the real property taxes.
Since the property owners have resolved their matter and the City has acknowledged that they must refund Crusaders's tax payments, this court awards judgment for plaintiff as against the City of Wildwood in accordance with the above determination.
Counsel for plaintiff to prepare and submit an appropriate form of order to this court within 7 days under the 5 day rule.