COMMONWEALTH of Kentucky,
TRANSPORTATION CABINET,
et al., Appellants,

v.

AMERICAN TRUCKING
ASSOCIATIONS, INC.,
et al., Appellees.

No. 87–SC–811–TG.

Supreme Court of Kentucky.

March 3, 1988.

James R. Cox, Lisabeth Hughes Abramson, Hirn, Reed, Harper & Eisinger, Louisville, for appellants.

Daniel R. Barney, Robert Digges, Jr., Alexander, Va., Edgar A. Zingman, H. Carl Horneman, Wyatt, Tarrant & Combs, Louisville, for appellees.

William E. Johnson, Lawrence E. Forgy, Jr., Robert W. Kellerman, Stoll, Keenon & Park, Frankfort, amicus curiae.

SULLIVAN, Special Justice.

This is an appeal from an order of partial summary judgment of Franklin Circuit Court declaring the Kentucky Supplemental Highway Users (SHU) tax unconstitutional. The appellees represent interstate motor carriers whose vehicles are registered outside of Kentucky. The trial judge held the SHU tax violated the Commerce Clause, Art. I § 8 of the United States Constitution, by discriminating against heavy trucks registered outside of Kentucky that engaged in Interstate Commerce. For his finding of unconstitutionality the trial judge relied on *American Trucking Associations, Inc. v. Scheiner*, 483 U.S. ——, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987), which declared unconstitutional a Pennsylvania "axle" tax on motor carriers. A permanent injunction was also granted prohibiting the collection or enforcement of the SHU tax provisions by the Commonwealth of Kentucky. The only issue presented on appeal is the constitutionality of the tax. Finding the tax unconstitutional, we affirm.

The SHU tax, KRS 138.660(4)–(7) was enacted by the 1986 General Assembly and became effective January 1, 1987. It is imposed only on those vehicles with a combined license weight in excess of 59,999 pounds operated in whole or in part in Kentucky and is based upon the estimated miles to be traveled by the vehicle in Kentucky each year. SHU taxes are imposed in addition to any other taxes or registration fees and are assessed according to the following schedule:

| Annual Mileage Class | User Fee |
| --- | --- |
| Less than 10,000 | $150.00 |
| 10,000 to 19,999 | 160.00 |
| 20,000 to 29,999 | 170.00 |
| 30,000 to 39,999 | 180.00 |
| 40,000 and over | 200.00 |

For those carriers paying the SHU tax, in the event their actual mileage in Kentucky exceeds their estimate, an additional users tax is due according to the schedule. The minimum SHU tax is $150.00 per vehicle, and that tax must be paid by all vehicles which travel less than 10,000 miles in Ken-

tucky. The tax then increases only $10 for each additional 10,000 miles traveled to 39,-999 miles and provides a maximum tax of $200 per annum for all vehicles traveling in excess of 40,000 miles. A $50 fee can be paid in lieu of the tax for a temporary permit allowing use of Kentucky highways for 10 consecutive days, KRS 138.660(5)(c).

Theoretically the SHU tax is imposed on heavy trucks to defray the cost of road construction and maintenance necessitated by the operation of such vehicles. The tax was enacted to replace the prior weight-distance tax previously codified as KRS 138.-660(3)(a)-(b). The weight-distance tax required all motor carriers having a combined license weight in excess of 59,999 pounds to pay a tax of $0.0285 for each mile traveled in Kentucky. American Trucking Associations Inc. also challenged that tax, but its constitutionality was upheld by this Court in *American Trucking Association Inc. v. Commonwealth*, Ky., 676 S.W.2d 785 (1984).

*Scheiner*, supra, at 483 U.S. p. ——, 107 S.Ct. at p. 2847, 97 L.Ed.2d p. 251 condemned unapportioned flat taxes imposed on motor carriers engaged in multi-state activities saying:

"... Although out-of-state carriers obtain a privilege to use Pennsylvania's highways that is nominally equivalent to that which local carriers receive, imposition of the flat taxes for a privilege that is several times more valuable to a local business than to its out-of-state competitors is unquestionably discriminatory and thus offends the Commerce Clause ..."

and at p. ——, 107 S.Ct. p. 2839, 97 L.Ed.2d p. 242 the Court said:

"... the Commerce Clause prohibits a State from imposing a heavier tax burden on out-of-state businesses that compete in an interstate market than it imposes on its own residents who also engage in commerce among States."

The question before this Court is whether the Kentucky SHU tax is an unapportioned flat tax. An unapportioned flat tax is one imposed by a state for the privilege of making commercial entrances into its territory that is not gradated in accordance with the taxpayer's presence within the state and therefore has discriminatory impact on interstate motor carriers which are not based in that state.

The appellants contend the SHU tax is not an unapportioned flat tax because (1) it only applies to vehicles weighing in excess of 59,999 pounds and (2) it is gradated in accordance with the miles traveled in Kentucky by all vehicles in the weight class whether or not Kentucky based.

The Pennsylvania axle tax which was declared unconstitutional in *Scheiner* also applied only to vehicles over a certain weight, 26,000 pounds. The weight of vehicles subject to the SHU tax has no relevance to the tax's discriminatory effect. This gradation according to weight did not save the Pennsylvania tax, and it cannot salvage the Kentucky SHU tax.

Consideration of the appellants' second theory that the SHU tax is constitutional because it is gradated according to miles traveled in Kentucky requires more analysis. The Pennsylvania axle tax provided a gradated rate for trucks traveling up to 2,000 miles per year, but it provided a flat rate of $36 per axle for trucks traveling over 2,000 miles per year in the state. Therefore, for trucks traveling over 2,000 miles in Pennsylvania, it was an unapportioned flat tax. The SHU tax has gradations according to miles traveled. The fee for traveling up to 10,000 miles in Kentucky is $150. For each additional 10,000 miles a $10 fee is charged to 39,999 miles. Then all motor carriers traveling 40,000 miles per year or more pay an additional $20. The Kentucky tax therefore is apportioned into five (5) categories according to miles traveled in Kentucky. Unfortunately the tax is flat and unapportioned on both ends of the mileage spectrum. Motor carriers which travel substantially in excess of 40,000 miles per annum in Kentucky will bear a smaller burden of the tax, and motor carriers which travel less than 10,000 miles per year in Kentucky will bear the major weight of the SHU tax.

The per mile cost of operation caused by the SHU tax is less than .5 cents per mile for motor carriers traveling more than 40,-

000 miles per year in Kentucky. The cost per mile for motor carriers traveling a maximum of 40,000 miles to a minimum of 10,000 miles per year increases from .5 cents to 1.5 cents per mile. But most emphatic is the cost per mile for motor carriers traveling less than 10,000 miles per year which is 1.5 cents to $150 per mile. Foreign motor carriers engaged in interstate commerce invariably travel on average far fewer than 10,000 miles per year on Kentucky highways and far less miles in Kentucky than do carriers based in this state. For that reason the foreign motor carriers incur the greatest per mile cost imposed by the SHU tax.[1]

The SHU tax provides for the purchase of a temporary tax sticker for $50 in lieu of payment of the SHU tax. The sticker authorizes travel in Kentucky for a ten consecutive day period. The Pennsylvania axle tax struck down in *Scheiner* had a similar provision providing for a five day trip permit for $25. These temporary permits do little, if anything, to relieve the discriminatory impact of the tax since they can only be utilized by extremely infrequent users who are assured of sufficient advance notice of the need to travel in Kentucky to purchase the permit. The temporary provision did not save the Pennsylvania axle tax, and it does not cause the Kentucky tax to pass constitutional muster. It is an unapportioned flat tax.

The SHU tax also falls when the "internal consistency test" referred to in *Scheiner* is applied. The U.S. Supreme Court at p. ——, 107 S.Ct. p. 2840, 97 L.Ed.2d p. 243-244 said:

"... To pass the internal consistency test, a state tax must be of a kind that, 'if applied by every jurisdiction, there would be no impermissible interference with free trade' ... If each State imposed flat taxes for the privilege of making commercial entrances into its territo-

ry, there is no conceivable doubt that commerce among the States would be deterred."

The court went on to specifically point to the adoption of "flat taxes" by states other than Pennsylvania and included the Kentucky SHU tax in that category. Additionally, it noted that seven states had adopted retalitory levies on motor carriers based in Pennsylvania and that these measures divide and disrupt the market for interstate transportation services. If every state adopted a tax like the SHU tax, a motor carrier doing business in the 48 states would be required to pay $7,200 to do the same business (travel the same miles) in the 48 states that a Kentucky based motor carrier pays $200 to do entirely within Kentucky. Such a tax "... that favors in-state business over out-of-state business for no other reason than the location of its business is prohibited by the Commerce Clause." Id. at p. ——, 107 S.Ct. p. 2841, 97 L.Ed.2d p. 244.

Therefore, the Kentucky SHU tax violates the Commerce Clause of the U.S. Constitution as an unapportioned flat tax that fails to meet the "internal consistency test." The tax is unconstitutional, and the Judgment of Franklin Circuit Court is affirmed.

All concur.

---

1. An affidavit filed in the trial court indicated that in Vermont foreign motor carriers traveled an average of less than 900 miles per year in Vermont while in-state motor carriers averaged over 17,000 per year. In New Jersey, foreign motor carriers averaged 1,700 miles per year while in-state motor carriers traveled approximately 10,000 per year. Other affidavits filed by the plaintiffs reflected that of two interstate foreign motor carriers whose vehicles used Kentucky highways in 1985, one carrier's 10,461 vehicles averaged 2,665 miles per year each and the other's 70 vehicles averaged 1,861 miles per year each.