PRIVATE TRUCK COUNCIL OF AMER-
ICA, INC., Circle W. Transportation,
Inc., and Roy E. Griffis, On behalf of
Themselves and all Others Similarly
Situated, Appellants,

v.

OKLAHOMA TAX COMMISSION,
et al., Appellees,

and

Associated Motor Carriers of
Oklahoma, Inc., Intervenor.

No. 68401.

Supreme Court of Oklahoma.

June 28, 1990.

As Amended March 5, 1991.

William B. Rogers & Associates, by William B. Rogers and Ronald C. Palmatary, Oklahoma City, and Zuckert, Scoutt, Rasenberger & Johnson, by Richard A. Allen and Andrew R. Plump, Washington, D.C., for appellants.

Oklahoma Tax Com'n by Joe Mark Elkouri and Stanley Johnston, and Office of the Atty. Gen., by Thomas L. Spencer, As Intervenor, Oklahoma City, for appellees.

Kimball, Wilson & Walker, by Thomas G. Ferguson, Jr., Oklahoma City, for intervenor.

DOOLIN, Justice.

Appellants Private Truck Council of America, Inc., Circle W. Transportation, and Roy E. Griffis, (Truckers)[1] have chal-

---

1. Trucker, Private Truck Council of America, Inc., (PTCA), is a nonprofit business association incorporated in 1939 under the laws of New York, with its principal place of business in Washington, D.C. PTCA is comprised of over 1,800 companies operating trucks and related equipment as private carriers. A large number of PTCA's member companies, operating in in-

lenged the constitutionality of 47 O.S.Supp. 1986 § 1120(K) and 68 O.S.Supp.1982 § 607.1. The questioned statutes impose fees and taxes on out of state motor carriers, operating in Oklahoma, in the same manner and extent that Oklahoma based motor carriers are taxed in other states. The pivotal issue presented is whether 47 O.S. § 1120(K) and 68 O.S. § 607.1 discriminate on their face against interstate commerce and nonresident motor carriers in violation of both the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3, and the Privileges and Immunities Clause, U.S. Const., Art. IV, § 2, cl. 1. Other issues before this Court are whether Truckers are entitled to reimbursement of litigation expenses and reasonable attorneys' fees, and whether Truckers are entitled to refunds, and if so, whether retroactive or prospective application is appropriate.

## I. Factual Background.

In its overall taxing scheme, the State of Oklahoma imposes several fees and taxes on all motor carriers operating within its borders. At the "first tier", the State imposes an annual registration fee, determined by the vehicle's total weight, for all trucks and related equipment operating in the State. 47 O.S.Supp.1985 § 1101 et seq. As a participating member of the International Registration Plan (IRP), an apportioned interstate registration system, Oklahoma also shares its registration fees for Oklahoma based-motor carriers, engaged in interstate commerce, with other participating IRP States, wherein the motor carrier travels. 47 O.S.1985 § 1120.

In return, Oklahoma receives a percentage of nonresident motor carrier's total registration fee which is determined by dividing the vehicle's actual mileage within Oklahoma by its overall total mileage for the preceding year. Thus, with respect to motor carriers engaged in interstate commerce, Oklahoma's total registration fees are determined by the vehicle's registration fee, and its percentage share of the vehicle's in-state mileage. 47 O.S.1985 § 1120(B). No Oklahoma motor carrier is required to pay more than one full registration fee, nor does the State impose registration fees against motor carriers based in non-IRP States. Although Oklahoma does not share its registration fees with non-IRP States, the appellee, Oklahoma Tax Commission, is "authorized and empowered to enter into and make reciprocal compacts and agreements" with non-IRP States. 47 O.S.1985 § 1123.

At the "second tier", the State also imposes a tax on all motor carriers, regardless of their state of registration, for the use of motor fuel within the State. Additionally, a number of special excise taxes are imposed on the use of diesel fuel. 68 O.S.1981 §§ 501 and 601 et seq.

Beyond the traditional registration fees and fuel taxes is a "third tier" tax. Such taxes are known as "mirror" or "retaliatory" taxes, and are also called "third structure" taxes. Third structure taxes are neither apportioned nor prorated, and examples include: ton-mile taxes, based on the truck's weight and miles driven in the taxing state; axle taxes, a flat charge based on the number of axles on each

terstate commerce through Oklahoma, register their vehicles in states against which the Oklahoma Tax Commission retaliates under the authority contained in §§ 1120(K) and 607.1. PTCA's principal purpose is to protect and promote the interests of its members by a variety of activities, including disseminating information, undertaking educational activities, lobbying Congress and state legislatures on regulatory issues affecting private carriers, and engaging in litigation of this kind on behalf of its members. Trucker, Circle W, a subsidiary of Westinghouse Electric Corporation, provides transportation primarily for that company throughout the nation, with fifteen vehicles that are registered in

Pennsylvania. Those vehicles paid Pennsylvania's annual $36.00 per axle tax, and accordingly were also subject to Oklahoma's corresponding retaliatory tax. In 1984, for example, Circle W, through Westinghouse, paid Oklahoma $1,080.00 in mirror taxes.

Trucker, Roy E. Griffis and his wife, Freida Griffis, reside in Bearden, Arkansas, and began a trucking business in January 1984. The Griffises operate in several states, including Oklahoma. Their truck is registered in Arkansas, and accordingly they have paid Oklahoma's retaliatory tax of $175.00 per year and its retaliatory fuel marker fee of $10.00 per year.

vehicle; annual fuel marker fees, and trip fees.

In the instant case, retaliatory taxes and fees are imposed solely on certain nonresident motor carriers whose vehicles are registered in states that impose third tier taxes on heavy trucks registered in Oklahoma.[2] The Oklahoma Legislature, by enacting the *"mirror"* statutes in 1982, intended that registration and licensing fees, and motor fuel taxes "assessed against residents of other states operating similar vehicles in Oklahoma be comparably the same as the (fees and taxes) assessed against residents of Oklahoma operating a similar vehicle for a similar purpose in such other state." 47 O.S. § 1120(K), and 68 O.S. § 607.1(D).

In 1983, the Oklahoma Tax Commission started imposing mirror fees and taxes against motor carriers with vehicles registered in 25 states.[3] The retaliatory taxes and fees, varying in amount, are wholly dependent upon the vehicle's state of registration, because the taxing scheme mirrors the fees and taxes imposed by that state as a condition precedent to the use of that state's highways by Oklahoma based carriers.[4] The revenues generated by these fees and taxes are distributed and used for the construction and maintenance of the highways and roads in the State of Oklahoma.

## II. Procedural Background.

Truckers filed this class action, on behalf of themselves and all other persons similarly situated, on December 17, 1984. With respect to the Commerce Clause, Truckers keenly recognized that a State may require persons engaged in interstate commerce to pay their fair share of state taxes.[5] However, Truckers argued that Oklahoma's retaliatory fees and taxes are a blatant and an egregious violation of the Commerce Clause, because they discriminate, on their face, against nonresident motor carriers. Truckers sought a declaratory judgment declaring Oklahoma's retaliatory statutes unconstitutional, and also requested a permanent injunction against collection of the challenged taxes, refunds of all taxes and fees paid by class members, and attorneys' fees and cost. After having its "class action" certified as such pursuant to 12 O.S. Supp.1987, § 2023(B)(1)(b) and (B)(2), Truckers moved for summary judgment.

The Tax Commission argued that Truckers' frontal attack upon the constitutionality of Oklahoma's statutes could not be determined without a "cost impact" analysis. Since Truckers failed to produce any factual evidence showing actual damages, measured in dollars and cents, resulting from the alleged discriminatory intent or effect of the statutes, the Tax Commission

---

**2.** Section 1120(K) provides in pertinent part:

> In addition to those taxes or fees imposed by Sections 22.1 through 22.34 of this title, the same or substantially the same type or category of tax or fee may be imposed upon an out-of-state resident as is imposed upon residents of Oklahoma for the same or substantially similar use of a vehicle in such other state in the amount, or approximate total amount, of any fee or tax, including property, motor fuel, excise, sale, use or milage tax required by the laws of such other state to be paid by a resident of this state making the same or similar use of a like vehicle in such state.

> Section 607.1 provides in pertinent part:
> In addition to those taxes or fees imposed by Articles 5, 6, and 7 of this title, the same or substantially the same type or category of tax or fee may be imposed upon an out-of-state resident as is imposed upon residents of Oklahoma for the same or substantially similar use of a vehicle in such other state in the

amount, or approximate total amount, of any fee or tax, including property, motor fuel, excise, sales, use or mileage tax required by the laws of such other state making the same or similar use of a like vehicle in such state.

**3.** These are Alabama, Arizona, Arkansas, Connecticut, Delaware, Florida, Georgia, Idaho, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Mississippi, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Nevada, Ohio, Oregon, Pennsylvania, Vermont, and West Virginia.

**4.** For example, because Arkansas imposed a nonapportioned flat-fee of $175.00 per year against resident and nonresident motor carriers, Oklahoma retaliated by imposing the same fees against Arkansas registered carriers doing business in the State. *See* Ark.Code Ann. tit. 27, § 27–35–205 (1983) (repealed 1987).

**5.** *Maryland v. Louisiana,* 451 U.S. 725, 754, 101 S.Ct. 2114, 2133, 68 L.Ed.2d 576 (1981).

urged the district court to reject Truckers' claim of facial unconstitutionality.

While not representing any party in this case, the Oklahoma Attorney General and the Associated Motor Carriers of Oklahoma, Inc., were granted permission to intervene pursuant to 12 O.S.Supp.1984, § 2024. Since the imposition of third structure taxes upon Oklahoma base-registered operators of motor carriers constitutes a barrier to conducting interstate business in that taxing state, both intervenors, and the Tax Commission, asked the trial court to uphold the constitutionality of the disputed statutes, because the Oklahoma Legislature further promoted interstate commerce by equalizing the third tier taxation burden.

Finding "no disputed material issues of fact," the district court denied Truckers' motion for summary judgment. The court further upheld the constitutionality of both retaliatory statutes, and granted final judgment to the Tax Commission, as a matter of law. In its memorandum opinion, the district court expressly acknowledged that the Supreme Judicial Court of Maine had struck down Maine's reciprocal truck taxes as a violation of the Commerce Clause.[6]

Curiously, the district court also noted that the Maine Supreme Judicial Court had found unpersuasive, and "refused to accord any precedential value" to an earlier New Jersey trial court decision which upheld New Jersey's retaliatory truck tax.[7] The Maine Court found that "any significance accorded the Supreme Court's 1974 summary disposition of *B & L Motor Freight* must yield to supervening 'doctrinal developments.'" *See Private Truck Council,* 503 A.2d, at 218 n. 7.

Nevertheless, our district court, relying on the United States Supreme Court's summary disposition of *B & L* to support its

contention that "the matter was no longer open to question," concluded:

> It would seem that the view taken by the New Jersey Court is better reasoned and more in accord with the views of the United States Supreme Court.
>
> It is the actual effect on interstate commerce that we must consider, not the form of the statute. It seems to me that the purpose of the reciprocal laws is to motivate all states to abandon excessive taxes on out-of-state truckers, and I am not willing to say that such laws are either an undue burden on interstate commerce or that they violate the privileges and immunities clause.

Truckers appeal alleging that the district court erred in upholding the constitutionality of the challenged statutes. Truckers also contend that because the disputed statutes are facially unconstitutional, they are entitled to refunds of the fees and taxes collected and cost under the federal Civil Rights Act, 42 U.S.C. § 1983.

### III. A United States Supreme Court Procedural Ruling is not a precedential decision.

Initially, we must address the Tax Commission and Intervenors' contention, apparently adopted by the court below, that the United States Supreme Court's summary dismissal of *B & L* is binding precedent on this Court, regardless of our approval or disapproval of the Commerce Clause analysis contained in the opinion. In brief, the Attorney General asserts that *"B & L Motor Freight* is now a decision of the United States Supreme Court," and that "if it is to be overturned only the United States Supreme Court may do so."

We disagree and reject these contentions, because they float in the sea of frivolity. The United States Supreme Court has made it "quite clear"[8] that its

---

6. *Private Truck Council v. Secretary of State,* 503 A.2d 214 (Me.1986), *cert. denied* 476 U.S. 1129, 106 S.Ct. 1997, 90 L.Ed.2d 677 (1986).

7. *B & L Motor Freight, Inc. v. Heymann,* 120 N.J.Super. 270, 293 A.2d 711 (Ch.Div.1972), aff'd mem., 125 N.J.Super. 372, 311 A.2d 184 (App. Div.1973), certif. denied, 64 N.J. 494, 317 A.2d 707 (1974), appeal dismissed, 419 U.S. 1042, 95

S.Ct. 613, 42 L.Ed.2d 636 (1974), reh'g denied, 420 U.S. 913, 95 S.Ct. 837, 42 L.Ed.2d 845 (1975). *But see* n. 11 infra and accompanying text.

8. *Washington v. Confederated Bands and Tribes,* 439 U.S. 463, 476 n. 20, 99 S.Ct. 740, 749 n. 20, 58 L.Ed.2d 740 (1979). In the same vein, we stated this limitation in *Turpen v. Okla. Corp.*

summary dismissals are, ..., to be taken as rulings on the merits, ..., in the sense that they rejected the 'specific challenges presented in the statement of jurisdiction' and left 'undisturbed the judgment appealed from.' *They do not, however, have the same precedential value here as does an opinion of this Court after briefing and oral argument on the merits, ....* A summary dismissal of an appeal represents no more than a view that the judgment appealed from was correct as to those federal questions raised and necessary to the decision. *It does not, as we have continued to stress, ..., necessarily reflect our agreement with the opinion* of the court whose judgment is appealed. *It is not at all unusual for the Court to find it appropriate to give full consideration to a question that has been the subject of previous summary action.* [Emphasis added] [Citations omitted].

█ Where the constitutionality of a state statute is questioned, summary actions by the Supreme Court of the United States, except for their persuasive value, have no final or binding effect on this Court. Nor can such summary actions be regarded as precedent in later cases presenting the precise question previously subjected to summary action.[9] It is the prerogative of this Court to determine whether this State's statutes pass constitutional muster. As we previously stated, "[t]he interpretation of state legislation and the 'construction placed upon state statutes by our highest court is binding upon the United States Supreme Court.'"[10]

In the instant case, *B & L* is irrelevant, because the New Jersey Supreme Court has agreed with one of its lower courts in overruling *B & L*. In striking down New Jersey's third tier taxes and fees that state's Superior Court, Appellate Division, agreed with the Supreme Judicial Court of Maine's assessment and concluded:

> While we entertain doubts about whether the discrimination question was decided in that case, we need not decide the issue because we are satisfied that in any event *B & L* **must yield to supervening doctrinal development,** .., which requires a different result.[11] [Emphasis added.]

█ The Attorney General's contention that since 1972 "no doctrinal developments have occurred which would affect this issue," is inconsistent with the cases cited in brief.[12] Despite the fact that the United States Supreme Court struck down Pennsylvania's marker fee and axle tax as impermissible under the Commerce Clause,[13] the Attorney General, citing *Western and Southern Life Insurance Company v. State Board of Equalization,* 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981) as precedent, asserts that this Court should uphold the constitutionality of the challenged statutes, because "Congress has clearly expressed its intent to allow the States the power to tax interstate motor carriers free from attacks under the Commerce Clause." 49 U.S.C. § 10521. Admittedly, state regulation and taxation of insurance companies are not subject to Com-

---

*Comm'n,* 769 P.2d 1309, 1315 (Okl.1988): summary dispositions are a "source of authority for state courts, but the precedential weight of that summary disposition is confined to the narrowest possible grounds."

**9.** Id.

**10.** *Ingram v. Oneok,* 775 P.2d 810, 813–14 (Okl. 1989), quoting *United States v. Home Federal S. & L. Ass'n of Tulsa,* 418 P.2d 319, 325 (Okl. 1966).

**11.** *Private Truck Council v. State,* 221 N.J.Super. 89, 534 A.2d 13 (1987), aff'd per curiam "for the reasons expressed in the opinion of the Appellate Division," 111 N.J. 214, 544 A.2d 33 (1988). The Superior Court of New Jersey also noted

that our district court's opinion, which heavily relied upon *B & L,* is the only decision "upholding a counterpart fee similar to New Jersey's." *See Private Truck Council,* supra, 534 A.2d, at 17 n. 4.

**12.** *See generally, American Trucking Ass'ns, Inc. v. Gray,* 288 Ark. 488, 707 S.W.2d 759 (1986) (Upholding the constitutionality of Arkansas' Highway Use Equalization tax), vacated and remanded 483 U.S. 1014, 107 S.Ct. 3252, 97 L.Ed.2d 752 (1987), rev'd on remand as a violation of the Commerce Clause, 295 Ark. 43, 746 S.W.2d 377 (1988).

**13.** *See American Trucking Ass'ns v. Scheiner,* 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987).

merce Clause limitations because Congress has exempted the insurance industry from Commerce Clause coverage.[14] However, state taxation of motor carriers engaged in interstate commerce remains fully subject to the strictures of the Commerce Clause. The Supremacy Clause, U.S. Const., Art. VI, cl. 2, and the Attorney General's recognition of *Scheiner,* supra note 13, fully supports our conclusion.

### IV. The questioned statutes are plainly discriminatory.

■ The Commerce Clause is the origin of Congressional authority "To regulate Commerce ... among the several States, and with the Indian Tribes."[15] More important for the purposes of this appeal, the Clause also implicitly limits the State's power to discriminate against interstate commerce.[16] The fundamental "purpose of the Commerce Clause was to create an area of free trade among the several States."[17] The essential tenet of the Commerce Clause is that no State may practice economic protectionism by imposing "a tax which discriminates against interstate commerce ... by providing a direct commerical advantage to local business."[18] In its continuous task of defining the limits of the Commerce Clause on State power, the Supreme Court has observed:[19]

> The prohibition against discriminatory treatment of interstate commerce follows inexorably from the basic purpose of the

Clause. Permitting the individual States to enact laws that favor local enterprises at the expense of out-of-state businesses "would invite a multiplication of preferential trade areas destructive" of the free trade which the Clause protects.

As the district court aptly noted, the Supreme Court of the United States has set forth a four-prong test for determining the validity of state statutes affecting interstate commerce: a state tax will pass constitutional muster only if (1) the activity being taxed has a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to services provided by the state.[20] Although the district court restated the preceding four-part test in its opinion, it did not scrutinize the challenged statutes under all four parts of the test. It is apparent that the district court erred in denying Truckers' constitutional attack.

Obviously, as asserted by Truckers, Oklahoma's retaliatory statutes do not pass the third and fourth prongs. Both statutes impose excessive fees and taxes on out-of-state registered motor carriers that are not imposed on Oklahoma registered motor carriers. "[A] state tax that favors in-state business over out-of-state business for no other reason than the location of its business is prohibited by the Commerce Clause."[21]

---

14. *See* McCarren–Ferguson Act, 15 U.S.C. § 1011, et seq.

15. U.S. Const., Art. I, § 8, cl. 3.

16. *H.P. Hood & Sons, Inc. v. Dumond,* 336 U.S. 525, 532–533, 69 S.Ct. 657, 662, 93 L.Ed. 865 (1949); *Hughes v. Oklahoma,* 441 U.S. 322, 326, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250 (1979). "[E]ven in the absence of a congressional exercise of this power, the Commerce Clause 'prevents the States from erecting barriers to the free flow of interstate commerce.'" *American Trucking Ass'n, Inc. v. Larson,* 683 F.2d 787, 790 (3d Cir.) [quoting *Raymond Motor Transportation, Inc. v. Rice,* 434 U.S. 429, 440, 98 S.Ct. 787, 793, 54 L.Ed.2d 664 (1978)], *cert. denied,* 459 U.S. 1036, 103 S.Ct. 448, 74 L.Ed.2d 603 (1982).

17. *McLeod v. J.E. Dilworth Co.,* 322 U.S. 327, 330, 64 S.Ct. 1023, 1026, 88 L.Ed. 1304 (1944).

18. *Northwestern States Portland Cement Co. v. State of Minnesota,* 358 U.S. 450, 458, 79 S.Ct.

357, 362, 3 L.Ed.2d 421 (1959); *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 268, 104 S.Ct. 3049, 3052, 82 L.Ed.2d 200 (1984).

19. *See Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 329, 97 S.Ct. 599, 607, 50 L.Ed.2d 514 (1977), quoting *Dean Milk Co. v. Madison,* 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951).

20. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977). *See also, Maryland v. Louisiana,* 451 U.S., at 754, 101 S.Ct., at 2133.

21. *Scheiner,* 483 U.S., at 286, 107 S.Ct., at 2841. *See also, American Trucking Ass'ns, Inc. v. Conway,* 146 Vt. 574, 508 A.2d 405 (1986), *cert. denied* 483 U.S. 1020, 107 S.Ct. 3262, 97 L.Ed.2d 761 (1987); *Department of Revenue v. Private Truck Council of America, Inc.,* 531 So.2d 367 (Fla.App. 1 Dist.1988).

Appellees' contention that the mirror taxes and fees are fairly related to the services provided by the state, that is, the cost of construction and maintenance of Oklahoma's highway system, is unavailing. All motor carriers, having paid one state's registration fee, are free to travel all the roads in that jurisdiction, and are entitled to freely operate in the interstate market by making commerical entrances into all the States.[22] Appellees' argument must fail because they confuse a tax on the privilege of using this State's highways with a tax on the privilege of engaging in interstate commerce. "[T]he Commerce Clause prohibits a State from imposing a heavier tax burden on out-of-state businesses that compete in an interstate market than it imposes on its own residents who also engage in commerce among States."[23]

In considering the state's entire scheme of taxation, we note that Oklahoma does not impose any complementary or offsetting taxes on comparable intrastate motor carriers engaged in interstate commerce.[24] Neither the Tax Commission nor Intervenors have shown that such a compensatory tax exists in Oklahoma. Finding no equality of treatment between local in-state and out-of-state interstate commerce carriers, we must conclude that the ultimate effect of the statutes are not compensatory in nature, because they favor intrastate business interest.[25]

Next, we reject the Tax Commission's adverse dollars and cents "cost-impact" ar-

gument. In the present case, no record establishing the economic burden of the challenged taxes on out-of-state carriers is required. The Supreme Court of New Hamshire, invalidating a similar New Hampshire tax,[26] observed that:

> A factual record delineating the greater burden on out-of-state vehicles is necessary only if the statute does not discriminate on its face.... Knowledge of the amount of discrimination imposed by a statute is not necessary to decide that it discriminates. *'We need not know how unequal the tax is before concluding that it unconstitutionally discriminates.'* [emphasis ours].

We also find that the legislative purpose in enacting the challenged statutes and the district court's conclusion that such defensive measures are justified by their purpose runs afoul of the "very purpose of the Commerce Clause [in] creat[ing] an area of free trade among the several States."[27] Appellees' contention that the Legislature enabled the state's taxing scheme to cancel the discriminatory effect that other state taxes impose on Oklahoma based carriers is unpersuasive. Discrimination cannot be corrected by retaliatory discrimination.[28] Retaliatory legislation, designed to motivate a sister State to cease its alleged unconstitutional tax burden on interstate commerce, has no legitimate State purpose and is a wholly unacceptable legislative remedy.[29] The appropriate remedy for an-

---

**22.** *Scheiner,* 483 U.S., at 283, 107 S.Ct., at 2840. *See also, Private Truck Council of America,* 517 A.2d, at 1154.

**23.** *Scheiner,* 483 U.S., at 282, 107 S.Ct., at 2839. Oklahoma's mirror taxes are indistinguishable from Pennsylvania's unapportioned flat tax. Consequently, the challenged taxes also fail to pass the "internal consistency test" imposed in *Scheiner* 483 U.S., at 284, 107 S.Ct., at 2840: "To pass the internal consistency test, a state tax must be of the kind that, 'if applied by every jurisdiction, there would be no impermissible interference with free trade.' (Citation omitted.) If each State imposed flat taxes for the privilege of making commercial entrances into its territory, there is no conceivable doubt that commerce among the States would be deterred."

**24.** *See Maryland v. Louisiana,* 451 U.S., at 756–58, 101 S.Ct., at 2134–135.

**25.** *Id.,* at 758–59, 101 S.Ct., at 2135.

**26.** *Private Truck Council of America v. State,* 128 N.H. 466, 517 A.2d 1150, 1153–154 (1986), quoting *Maryland v. Louisiana,* 451 U.S., at 760, 101 S.Ct., at 2136. *See also, Armco, Inc. v. Hardesty,* 467 U.S. 638, 644, 104 S.Ct. 2620, 2623, 81 L.Ed.2d 540, reh'g denied 469 U.S. 912, 105 S.Ct. 285, 83 L.Ed.2d 222 (1984).

**27.** *McLeod, supra,* n. 17.

**28.** *See Travis v. Yale & Towne Mfg. Co.,* 252 U.S. 60, 40 S.Ct. 228, 64 L.Ed. 460 (1920).

**29.** *Great Atlantic & Pacific Tea Co. v. Cottrell,* 424 U.S. 366, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976); *New Energy Co. v. Limbach,* 486 U.S. 269, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988); *Private Truck Council,* 534 A.2d, at 17.

other state's unconstitutional burden on interstate commerce in an action under the Commerce Clause itself.[30]

Truckers' challenge to the constitutionality of 47 O.S. § 1120(K) and 68 O.S. § 607.1 under the Commerce Clause must be upheld, and in that respect, we reverse the district court. We hold that both statutes violate the fundamental requirement of nondiscrimination against interstate commerce. There is no equality of treatment, because Oklahoma does not impose any compensatory tax on domestic carriers engaged in intrastate or interstate commerce. In light of our disposition of Truckers' discrimination claim, we find it unnecessary to fully address their constitutional challenge under the Privileges and Immunities Clause.[31]

### V. Truckers are entitled to a partial refund.

We now turn to the principal thrust of Truckers' appeal of the district court's opinion denying Truckers' request for refunds of all taxes previously paid pursuant to the challenged statutes. Truckers assert that they are entitled to a refund of all retaliatory taxes and fees pursuant to 42 U.S.C. § 1983. Nearly $12,000,000.00 was collected under the statutes from April, 1983 through October, 1987. We affirm the district court's denial of Truckers' federal claim for refunds under § 1983. Okla-

homa has an adequate State remedy affording the requested relief.

The Commission argues that Truckers' requested relief is contrary to Oklahoma law. The Commission contends that Oklahoma law requires Truckers to pay the taxes under protest, and then file suit to recover the taxes so paid under this alleged misinterpretation of law.[32] The Commission seems to argue that a class action for refunds may not be brought in Oklahoma, for it asserts that Truckers' monetary relief, if any, is limited to a refund of taxes paid in 1984, and then only to the named motor carriers. The Commission desires this court to limit recovery to Circle W. Transportation and Roy E. Griffis in the amount of $1,265.00. Finally the Commission argues that the only other relief available to Truckers' class is a declaratory judgment as to the constitutionality of the statutes.

In our view, the Commission's argument totally misconceives the specific statutory provision authorizing an action for declaratory and injunctive relief, including abatement of the challenged taxes, and a refund. 68 O.S.1981, § 226. This special tax refund statute, § 226(a), reads in part: "In addition to the right to a protest ..., a right of action is hereby created to afford a remedy to a taxpayer aggrieved by the provisions of this article or of any other state tax law." This all-in-one legal remedy is fur-

---

**30.** *A & P Tea Co.,* 424 U.S., at 379–80, 96 S.Ct., at 931–32. "A state may not violate the Commerce Clause in an attempt through self-help to coerce another state into desisting from a Commerce Clause violation." *Private Truck Council,* 503 A.2d, at 218. *See also Private Truck Council of America,* 517 A.2d, at 1154.

**31.** In this class action, Truckers stand in the shoes of all non-Oklahoma businesses operating in interstate commerce as private motor carriers. However, in its corporate capacity, Truckers are not natural persons nor "Citizens of each State ... entitled to all Privileges and Immunities of Citizens of the several States." U.S. Const. art. IV, § 2, cl. 1. "Corporations are not entitled under article 4, § 2, Const. U.S., 'to all privileges and immunities of citizens in the several states.'" *Nelson v. Deming Inv. Co.,* 21 Okl. 610, 614, 96 P. 742, 743 (1908), citing *Lafayette Ins. Co. v. French,* 59 U.S. (18 How.) 404, 15 L.Ed. 451 (1856), and *Paul v. Virginia,* 75 U.S. (8

Wall.) 168, 181, 19 L.Ed. 357 (1869). *See also Western & Southern Life Ins. Co.,* 451 U.S., at 656, 101 S.Ct., at 2076–77. Consequently, we hold Truckers are not entitled to protection under the Privileges and Immunities Clause. While quite novel and innovative, we also reject Truckers' argument to create, here on appeal, a sub-class consisting only of the Griffises, so this court may address the Privileges and Immunities Clause claim of all other non-corporate members of this class action. Only a district court may certify a sub-class action. *See* 12 O.S.1985 Supp. § 2023(C)(4) [When appropriate: (a) an action may be brought or maintained as a class action with respect to particular issues, or (b) a class may be divided into subclasses and each subclass treated as a class]. *See also Shores v. First City Bank Corp.,* 689 P.2d 299, 301 (Okl.1984).

**32.** *Sun Oil Co. v. Okla. Tax Comm'n,* 620 P.2d 896 (Okl.1980).

ther limited to cases "where the taxes complained of are 1) an unlawful burden on interstate commerce, 2) violative of Acts of Congress or the United States Constitution, or 3) in cases where jurisdiction is vested in any of the courts of the United States."[33] Truckers satisfied the first statutorily delineated criterion. Furthermore, Truckers gave proper notice on December 14, 1984, as required by § 226(b), and "service of process upon the Chairman of the Tax Commission" was properly made as mandated by § 226(c). The legal avenues for bringing an action under § 226(c) are not expressly limited, there is no requirement that a taxpayer seek and exhaust administrative remedies. However, there is a requirement that a taxpayer must pay the taxes under protest or at the time of payment give notice of an intent to file a lawsuit.[34] Truckers complied with the proscribed statutory method mandated by the legislature.

■ The Commission's argument also implicitly challenges the standing of Private Truck Council of America (PTCA), because PTCA is not itself an aggrieved taxpayer, and has suffered no concrete injury resulting from the challenged statutes. This contention is without merit. As we noted at the outset, PTCA is a voluntary business association, with 1,800 companies as members. *See* n. 1 supra. PTCA's associational standing to prosecute this action as the representative of its constituents is

clear under prior decisions of the United States Supreme Court.[35] The Supreme Court of the United States "has recognized that an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity."[36] In determining whether an association has standing, the United States Supreme Court has:

> recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.[37]

With respect to Truckers' claim for declaratory and injunctive relief, we have no doubt that PTCA satisfies the above criteria. In its petition, PTCA alleged that many of its members are subject to the challenged taxes since its members have vehicles registered in states against which Oklahoma retaliates; thus, PTCA's members would have standing in their own right to assert a justiciable case. The interests that PTCA seeks to protect are definitely germane to the 51 year old association's purpose. Finally, PTCA's Commerce Clause claim, request for declaratory and injunctive relief, and refunds does not require individualized proof of such claim, inasmuch as such financial informa-

33. *Cimarron Industries, Inc. v. Okla. Tax Comm'n,* 621 P.2d 539, 542 (Okl.1980).

34. Section 226(d) provides:
Upon request of any taxpayer and upon proper showing that the principle of law involved in the assessment of any tax is already pending before the courts for judicial determination, the taxpayer, upon agreement to abide by the decision of the court, may pay the tax so assessed under protest, but need not file a suit.
However, § 226(d) is inapplicable to the instant cause inasmuch as it is a certified class action. Neither appellee nor intervenors have argued "that the trial court abused its discretion in certifying this class action." *Shores v. First City Bank,* 689 P.2d, at 301.

35. *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *National Motor Freight Ass'n v. United States,* 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). See, e.g., n. 44 infra. This court has also recognized the standing of an association to seek relief on behalf of it members: *Democratic Party of Oklahoma v. Estep,* 652 P.2d 271 (Okl.1982); *Oklahoma Ass'n of Municipal Attorneys v. State,* 577 P.2d 1310 (Okl. 1978).

36. *Hunt,* 432 U.S., at 342, 97 S.Ct., at 2441.

37. *Hunt,* 432 U.S., at 343, 97 S.Ct., at 2441.

tion is readily available from the records of the Commission.

■ Consequently, we must determine the question as to whether our ruling is to operate (1) retroactively from the time the taxes were first collected in 1983, (2) quasi-prospectively from the date of the *Scheiner* decision, or (3) prospectively. In *Griggs v. State ex rel. Okla. Dept. of Trans.,*[38] we observed that:

> Retroactive operation of an overruling decision is neither required nor prohibited by the United States Constitution. Judicial policy determines whether, and to what extent, a new rule will operate retroactively. In *Chevron Oil Co v. Huson,* [404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)], the United States Supreme Court isolated three factors for ascertaining when retroactivity of a new pronouncement should be restricted: (1) at the threshold, the decision must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or on an issue of first impression whose decision is not clearly foreshadowed; (2) the court must weigh the merits and demerits of applying the rule retroactively by considering the rule's prior history, its purpose and effect, and whether retroactivity will further or retard its operation; and (3) the court must consider the inequity flowing from retroactive application, including unfairness and hardship to the parties.

The Attorney General argues that if the tax statutes are declared unconstitutional, this court should make its decision prospective only and award no refunds. In analyzing Trucker's claim for retroactive application, the Attorney General relies heavily upon *First McAlester Corporation v. Okla. Tax Comm'n,*[39] and applies the three-prong test enunciated in *Chevron Oil Co* to the instant case. The Attorney General concludes that a prospective remedy would be sufficient relief, because Truckers are freed from paying the taxes, and a retroactive judgment would be fiscally disruptive to the State of Oklahoma. Because tax statutes are strictly construed against the state,[40] the Attorney General has not met the state's burden of presenting the required equitable predicate for this court to adopt a rule of pure prospectivity in this exceptional case.[41]

We are not at all persuaded by the Attorney General's argument, for it is bottomed on the ill-fated premise concerning the binding effect of the United States Supreme Court's summary dismissal of *B & L,* which we rejected in Part III supra. *B & L* was not adopted by the Supreme Court, nor did it establish a new binding principle of law so as to constitute a clear change in Commerce Clause jurisprudence as established by previous Supreme Court decisions. Even if this court substituted a more plausible alternative for *B & L,* i.e., the *Scheiner* opinion, in our view, that decision does not represent a clear break with past Commerce Clause precedent.

Although it is true that the Supreme Court did not overrule any clear past precedent in *Scheiner,* we observe that such a requirement is non-sequitur under the approach articulated in *Chevron.*[42] It is our belief that the Supreme Court in *Scheiner* did decide an *issue of first impression* by declaring the revenue implementation methodology employed by Pennsylvania's unapportioned flat tax unconstitutional. But, we must also recognize that the Supreme Court implicitly concluded that its resolution of *Scheiner* was foreshadowed by a long line of precedent invalidating unapportioned flat taxes.[43] We also observe that previous state court decisions may have foreshadowed the *Scheiner* pro-

---

**38.** 702 P.2d 1017, 1020 (Okl.1985).

**39.** 709 P.2d 1026 (Okl.1985).

**40.** *Oklahoma Tax Comm'n v. McAfee,* 461 P.2d 602, 605 (Okl.1969).

**41.** *Cash v. Califano,* 621 F.2d 626, 629 (4th Cir. 1980).

**42.** *See Gosa v. Mayden,* 413 U.S. 665, 673, 93 S.Ct. 2926, 2932, 37 L.Ed.2d 873 (1973).

**43.** *Scheiner,* 483 U.S., at 280–87, 107 S.Ct., 2838–842.

nouncement.[44] Thus, the state of Oklahoma can not argue that it was surprised by the results reached in *Scheiner*. Nevertheless, for the purposes of this case, we hold that *Scheiner* did establish a new constitutional principle.

The Supreme Court's pronouncement was 'new' in the sense that it decisively impeded a tax revenue practice accepted and relied upon by a number of states. Although *Scheiner* did not expressly overrule Oklahoma's retaliatory tax statutes, we cannot ignore the fact that the Supreme Court denounced the purpose and effect of the statutes in question.[45] Given the explicitness of the *Scheiner* pronouncement, we find it difficult to conceive and justify any continued good faith reliance upon the constitutionality of the laws after the *Scheiner* opinion. Notwithstanding the state's limited reliance interest under the threshold *Chevron* factor, we believe that *Scheiner's* newly established constitutional principle can not, without resulting in manifest injustice and inequity, be applied under a pure prospective approach.

The next factor of the *Chevron* standard is whether retroactive operation will further or retard the purpose of the Commerce Clause. The central "purpose of the Commerce Clause was to create an area of free trade among the several States." [46] As a practical matter, retroactive application would not necessarily advance the further development of Commerce Clause jurisprudence, because interstate commerce must pay its fair share of tax burdens for the governmental services it enjoys.[47] Furthermore, the Oklahoma Legislature has "a

significant interest in exacting from interstate commerce its fair share of the cost of state government." [48] However, unlike the situation presented in *First McAlester*, the Commission has not informed this court that it ceased collecting the taxes after the *Scheiner* opinion. Truckers have paid and are paying more than their proportionate share of the tax burden imposed on those non-residents engaged in interstate commerce. Furthermore, in light of the *Scheiner* decision, no appellee has conceded that the disputed statutes are unconstitutional, nor has the Oklahoma legislature repealed the state tax law. We will not retard the implementation of the *Scheiner* decision. Under these circumstances, the purpose criteria tip towards retroactive application of *Scheiner*.

Considering the inequities presented, if this court afforded complete retroactive application, and ordered refunds with interest as provided by § 226(b), obviously, we would impose a significant financial hardship upon the State in exercising its governmental functions. This we decline. On the other hand, the fact remains that this court can not, consistent with constitutional limitations, retard the very purpose of the Commerce Clause by permitting the State to violate the Commerce Clause and reap the financial benefits under a discriminatory tax law. To allow this application of nonretroactivity would deter any taxpayer's incentive to challenge the tax laws, and in the instant case, deny Truckers the benefit of the ruling in *Scheiner*. Furthermore, this state's statutory refund provision

**44.** *Private Truck Council v. Secretary of State,* 503 A.2d 214 (Me.1986), *cert. denied* 476 U.S. 1129, 106 S.Ct. 1997, 90 L.Ed.2d 677 (1986); *American Trucking Assn, Inc. v. Conway,* 146 Vt. 574, 508 A.2d 405 (1986), *cert. denied* 483 U.S. 1020, 107 S.Ct. 3262, 97 L.Ed.2d 761 (1987); *Private Truck Council v. State,* 128 N.H. 466, 517 A.2d 1150 (1986). *See also Commonwealth of Kentucky, Transportation Cabinet v. American Trucking Ass'ns, Inc.,* 746 S.W.2d 65 (Ky.1988); *American Trucking Ass'ns, Inc. v. Goldstein,* 312 Md. 583, 541 A.2d 955 (1988); *Black Beauty Trucking, Inc. v. Indiana Dept. of State Revenue,* 527 N.E.2d 1163 (Ind.Tax 1988); *Owner–Operators Independent Drivers Ass'n of America v. State,* 209 Conn. 679, 553 A.2d 1104 (1989);

*American Trucking Ass'ns, Inc. v. Conway,* 566 A.2d 1335 (Vt.1989).

**45.** "Such taxes can obviously divide and disrupt the market for interstate transportation services. In practical effect, ..., the taxes are plainly discriminatory." *Scheiner,* 483 U.S., at 285–86, 107 S.Ct., at 2841.

**46.** *McLeod, supra,* n. 17.

**47.** *Maryland v. Louisiana, supra,* n. 5.

**48.** *Department of Revenue of the State of Washington v. Ass'n of Washington Stevedoring Co.,* 435 U.S. 734, 748, 98 S.Ct. 1388, 1398, 55 L.Ed.2d 682 (1978).

would have no effect other than providing an illusory and empty victory. We can not allow the Commission to retain all funds collected after *Scheiner*. In light of the presumption of prospective application of state court decisions invalidating tax statutes,[49] and after a careful balance of the three *Chevron* factors, coupled with a showing of inequity on both parties in this exceptional case, we hold that Truckers are entitled to a partial refund pursuant to § 226. Truckers claim for refunds before June 23, 1987, the effective date of the *Scheiner* opinion, are denied.

 Truckers also contend that they are entitled to attorneys fees as provided under 12 O.S.1981 § 18(C) and 42 U.S.C. § 1988, including the costs of this action. Subsequent to Truckers' present action, the Oklahoma Legislature repealed § 18(C), with the adoption of this State's Pleading Code, 12 O.S.Supp.1984, § 2001 et seq. Truckers can not recover attorneys fees under a statute not applicable at the time they instituted this action, because they had no rights accrued thereunder.[50] Nor may Truckers recover attorneys fees under § 1988 for the adjudicated Commerce Clause violation.[51]

The judgment of the district court is REVERSED. On their face both §§ 1120(K) and 607.1 violate the fundamental requirement for non-discrimination against interstate commerce. Pursuant to § 226(b) the Oklahoma Tax Commission shall determine what amount of refund is due for tax periods or portions of tax periods occurring after June 23, 1987.[52] In the case of those taxes and fees reported and paid on the quarterly basis, for quarterly periods commencing July 1, 1987, and thereafter, together with interest. The refund shall be paid in the manner and from the accounts as provided by 68 O.S.Supp.1989, § 225(d).

This cause is REMANDED to the District Court for a final determination of interest as provided by statute, calculated from the dates set forth in this paragraph, entry of judgment as to that amount, including notification to all class members as determined by the tax rolls of the Commission, and further proceedings not inconsistent with the views expressed herein.

HARGRAVE, C.J., and SIMMS, KAUGER and SUMMERS, JJ., concur.

OPALA, V.C.J., LAVENDER, J., concur in part; dissent in part.

HODGES, J., dissents.

**49.** *National Can Corp. v. State of Washington Dept. of Revenue,* 109 Wash.2d 878, 749 P.2d 1286, 1292–93 (1988).

**50.** Okla. Const., Art. 5, § 54. *See also Gayman v. Mullen,* 58 Okla. 477, 161 P. 1051 (1916).

**51.** *Consolidated Freightways Corp. of Delaware v. Kassel,* 730 F.2d 1139 (8th Cir.1984); *Private Truck Council of America, Inc.,* 503 A.2d 214; *Private Truck Council of America, Inc. v. State of New Hampshire,* 128 N.H. 466, 517 A.2d 1150 (1986); *State v. Private Truck Council of America, Inc.,* 258 Ga. 531, 371 S.E.2d 378 (1988).

**52.** The United States Supreme Court in *American Trucking Assns. v. Smith,* —— U.S. ——, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990), found that the critical event for prospectivity is not the payment of the money but the occurrence of the underlying transaction. It further found that it was more equitable to refund the taxes paid for the 1987–88 tax year because if States collect prior to 1987 for those taxes then the parties would not be allowed a refund.